In the Matter of the Application of the MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Relative to Acquiring Title to Morris Avenue, from Tremont Avenue to Park View Terrace.

THE CITY OF NEW YORK, Appellant; THEODORE SATTLER et al., Respondents.

1. NEW YORK CITY — DISCONTINUANCE OF STREETS BY THE FILING OF MAPS.   The filing of maps, by the local authorities, of section 14 of the final maps of the twenty-third and twenty-fourth wards of the city of New York, prepared to some extent under chapter 545 of the Laws of 1890, which was a legislative plan to lay out a system of streets therein, rendering necessary the discontinuance of old streets that might interfere with the execution of the new plan, but was not a scheme for closing them, which maps were filed after chapter 1006 of the Laws of 1895 had taken effect, operated as matter of law to discontinue the old streets without any actual

or physical closing thereof, under section 2 of the latter act providing for the filing of maps designating only the streets to be laid out and declaring that upon and after the filing of such maps, the streets shown thereon should be the only lawful ones, provided the discontinued streets were not then actually in use. The act of 1895 was designed to supplement the act of 1890, and both must be read together in order to ascertain the general scheme for laying out and opening new streets and discontinuing old ones.

2. DESIGNATION UPON MAPS OF STREETS REQUIRED TO BE OMITTED THEREFROM. The tracing on the maps filed of the newly laid out streets in one color and the discontinued streets in another color, so as to render the new clearly distinguishable from the discontinued streets, was a substantial compliance with section 2 of the act of 1895, requiring that the discontinued streets should be omitted from the maps, and, moreover, chapter 712 of the Laws of 1896, which was designed to cure irregularities relating to the making and filing of maps under the acts of 1890 and 1895, was clearly intended to cure such an irregularity.

*Matter of Mayor, etc., of New York,* 56 App. Div. 122, affirmed.

(Argued February 26, 1901; decided April 16, 1901.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 4, 1901, which reversed an order of Special Term denying a motion on behalf of the petitioners to refer their claims for damages to the commissioners of estimate and assessment, pursuant to section 14 of chapter 1006 of the Laws of 1895, and granted said motion.

The questions certified and the facts, so far as material, are stated in the opinion.

*John Whalen, Corporation Counsel* (*Theodore Connoly, John P. Dunn* and *Thomas C. Blake* of counsel), for appellant. After the enactment of chapter 1006 of the Laws of 1895 there were two methods of closing streets in the city of New York provided by the legislature, of either one of which the city could avail itself. (*Holloway* v. *Southmayd*, 139 N. Y. 410 ; *White's Bank* v. *Nichols*, 64 N. Y. 65.) Chapter 545 of the Laws of 1890, authorizing the abandonment of public easements only in streets discontinued under its provisions, is not repealed by chapter 1006 of the Laws of 1895, authorizing the extinguishment, not only of the public, but also of the private easements in discontinued streets.

(*Matter of Mayor, etc.*, 157 N. Y. 409; Suth. on Stat. Const. § 157; *W. W. Co.* v. *Long Island City*, 23 App. Div. 82.) The easements of light, air and access which the petitioners' plot of land formerly enjoyed over old Monroe or Morris avenue have not been extinguished or lost by any act of the municipality, or by force of the provisions of chapter 1006 of the Laws of 1895. (*Holloway* v. *Southmayd*, 139 N. Y. 410; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; Lewis on Em. Dom. § 114; *Lahr* v. *M. El. Ry. Co.*, 104 N. Y. 269; *Matter of Mayor, etc.*, 157 N. Y. 412; *Matter of Douglass*, 46 N. Y. 42; *Moore* v. *Mayor, etc.*, 73 N. Y. 239; *Consolidated Ice Co.* v. *Mayor, etc.*, 53 App. Div. 266.) The streets bounding the block within which are situated the petitioners' premises have not been thrown open to public use, a condition precedent to the extinguishment of the petitioners' easements; the court herein had, therefore, no jurisdiction to appoint commissioners to appraise the damages claimed. (L. 1895, ch. 1006, § 14.) The enactment of chapter 712 of the Laws of 1896 did not cure the jurisdictional defect that the preparation and filing of the maps of section 14 of the final maps of the twenty-third and twenty-fourth wards did not comply with the provisions of section 2 of chapter 1006 of the Laws of 1895. (*Matter of Mayor, etc.*, 23 App. Div. 523.)

*Joseph A. Flannery* for respondents. Chapter 1006 of the Laws of 1895 is constitutional and a valid exercise of legislative power. (*Matter of Mayor, etc.*, 28 App. Div. 143; 157 N. Y. 409.) Morris avenue was discontinued and closed by virtue of the provisions of section 2 of chapter 1006 of the Laws of 1895, which act applied in terms to all general and permanent street plans in the city. (*Matter of Mayor, etc.*, 157 N. Y. 412; *Matter of Bd. of Education*, 24 App. Div. 117.) The streets and avenues shown in black lines and gray color as "hereby discontinued" upon the final maps of section 14 were "omitted" from said map within the meaning of section 2 of chapter 1006 of the Laws of 1895. (*Matter of Barclay*, 91 N. Y. 430; Sedg. on Stat. Const. [2d ed.] 320;

63

*C. I. Co.* v. *Mayor, etc.,* 53 App. Div. 266.) The maps and plans of the twenty-third and twenty-fourth wards were in all respects ratified and confirmed by chapter 712 of the Laws of 1896, and any failure to physically omit discontinued streets from the final map of section 14 was cured by that act. (*Ensign* v. *Barse,* 107 N. Y. 329 ; *Conde* v. *Schenectady,* 164 N. Y. 264; Mechem on Public Officers, § 557.) Chapter 1006 of the Laws of 1895, which provided a complete scheme for closing streets in New York city, superseded all prior inconsistent acts and was the exclusive provision of law on the subject. (*Matter of Dobson,* 146 N. Y. 357 ; *People* v. *Gold & Stock Tel. Co.,* 98 N. Y. 67 ; *City of Buffalo* v. *Neal,* 86 Hun, 76 ; *Matter of N. Y. Instn.,* 121 N. Y. 234 ; *People* v. *Jaehne,* 103 N. Y. 182.) The streets so shown on the final plans are closed at the latest when the title to a permanent street bounding the quadrangular square or plot within which said discontinued street is contained vests in the city, in other words, when such permanent street is legally opened. (Dillon on Mun. Corp. §§ 471, 538, 695 ; *Met. Ex. Co.* v. *Newton,* 21 N. Y. S. R. 73.)

BARTLETT, J. This appeal is taken by permission of the Appellate Division ; two questions are certified.

The petitioners are the owners of certain premises on the easterly side of Monroe avenue, between 181st and 182nd streets, in the city of New York. The claim of the petitioners is that Monroe avenue, between 181st street and a point north of their premises, has been discontinued and closed by the city and a new street known as Morris avenue has been laid out a short distance west thereof. The title to Morris avenue as newly laid out vested in the city of New York on November 29th, 1897.

On the 9th day of June, 1899, the respondents presented to the comptroller of the city of New York a claim in writing for damages sustained by reason of the closing and discontinuance of Monroe avenue pursuant to the provisions of chapter 1006 of the Laws of 1895. Thereafter, and on the

28th day of July, 1899, the petitioners served a notice of motion for an order directing the commissioners of estimate to ascertain the compensation which should be made to them for their damages in the premises, and providing that an award for said loss and damages be fixed by the commissioners and included in their report pursuant to the provisions of section fourteen of the act of 1895.

This motion was opposed by the city of New York upon the ground that Monroe avenue had not been closed and discontinued within the meaning of the act of 1895.

The Special Term denied the petitioners' motion and on appeal the Appellate Division reversed the order and granted the motion of petitioners. Thereafter, the city moved for leave to appeal to this court, which was granted, and stated that the following questions have arisen in this proceeding, which are certified to the Court of Appeals for review and determination, as follows:

1. Did the making and filing of the maps of section fourteen of the final maps of the twenty-third and twenty-fourth wards by the local authorities of the city of New York on December 17th, 1895, operate to discontinue and close Morris avenue (formerly known as Monroe avenue, or Avenue A) in front of the petitioners' premises under and in pursuance of chapter 1006 of the Laws of 1895?

2. Was the said Morris avenue in front of the petitioners' premises not shown on said final map of section fourteen of the twenty-third and twenty-fourth wards, so that the same ceases to be and remain a street and avenue within the provisions of said chapter 1006 of the Laws of 1895?

This proceeding involves a somewhat complicated question under a number of statutes, but the points raised are quite simple when the legislation bearing on the subject is chronologically considered. This legislation refers to the twenty-third and twenty-fourth wards in the city of New York, which is a district lying north of the Harlem river, and when consolidated with the city of New York was composed of a number of small villages, such as Morrisania, Fordham, West

Farms, etc., and the street system then existing was mainly the result of dedication by the filing of maps by private citizens having farm lands to divide up and sell. After the annexation the increase of population was very rapid and the necessity for a uniform street system became pressing.

Chapter 545 of the Laws of 1890 was an act providing for the election of a commissioner of street improvements in these two wards, and transferred to him certain powers that were then possessed by the department of public parks of the city. This commissioner was granted the exclusive power to locate and lay out, construct and maintain all streets, roads, avenues and public squares and places, and to devise plans for and locate all bridges and tunnels, and also sewers and drainage facilities; fixing the grades and widths of streets and avenues. The commissioner was required, within two years and six months from January 1st, 1891, to complete surveys, maps, plans and profiles of all streets, roads, avenues, public squares and places located and laid out or hereafter to be located and laid out in said territory, showing location, widths, grades, etc. The time in which to file maps was extended so as to include the period involved in this litigation.

The act further provided that when the maps, plans and profiles were so filed they were not to be subject to any further change or modification, but should be final and conclusive as to the city and all persons whomsoever.

Under this authority the commissioner proceeded to divide the district into twenty-eight sections and to make and file plans and profiles thereof, most of which were filed after June 12th, 1895, which was the date when chapter 1006 of the Laws of 1895 took effect.

The act of 1895 is entitled " An act to provide for discontinuing and closing streets, avenues, roads, highways, alleys, lanes and thoroughfares in cities of more than one million two hundred and fifty thousand inhabitants," and provides for the closing of streets in New York city, the consequent readjustment of the land titles caused thereby, and an estimate of damages incidental thereto.

This act has been before us in a proceeding wherein its constitutionality was challenged. In the case of *Matter of Mayor*, *etc., of N. Y.* (157 N. Y. 409) we held that its provisions were within the constitutional powers of the legislature, and Judge HAIGHT, writing for the court, said : " It is doubtless true that some of the provisions of the act pertaining to the acquiring of the fee and easements in discontinued streets, if they stood alone, might be construed as authorizing the taking of property for a private use, but when these provisions are considered in connection with the other provisions of the act, we find that they all aim at one object, and that is the laying out and opening of the streets and avenues of a city according to a plan adopted. Confessedly, this is for a public purpose, and we think that the acquiring of the fee and easements in the old roadways which are discontinued should be treated as incident and necessary to carry out the public improvement authorized by the provisions of the act." The opinion of the court was brief and adopted the opinion of Mr. Justice PATTERSON in the court below (28 App. Div. 143).

For the purposes of this case it is unnecessary to examine in detail the lengthy provisions of the act of 1895, which were fully considered by Mr. Justice PATTERSON.

The second and fourteenth sections of this act are specially involved at the present time.

The act of 1890 provided no scheme for the closing of old streets, but was a legislative plan to lay out a system of streets in the city of New York in the two great wards lying north of the Harlem river. The legislation of 1895 was evidently designed to supplement the law of 1890, and both of these acts must be read together in order to understand the general scheme for the laying out and opening of new streets and discontinuing the old streets that interfered with the consummation of that plan. More than eight hundred streets and sections of streets were shown on these maps as finally filed to be discontinued and closed. There can be no doubt, as stated by the corporation counsel at our bar, that this case presents questions of the greatest importance, and involves a vast sum

of money in which the city and private citizens alike are deeply interested.

Section two of the act of 1895 provides, in substance, that the local authorities authorized to lay out streets, shall, upon any map or plan so made and filed, designate only the streets, avenues and roads to be laid out. This section also provides that after the filing of such a map the streets, avenues and roads shown thereon shall be the only lawful ones, provided the discontinued streets are not then actually in use. If actually in use it is provided that if they are included within a square or plot of ground made by the intersection of streets upon the map or plan, that they shall continue to be used until any one of the streets, avenues or roads bounding such plot shall be opened by the city. This section also enacts that its provisions shall apply to maps and plans heretofore made and filed.

The proceeding now before the court, in which the petitioners have intervened, was instituted by the city to gain possession of the title to Morris avenue as newly laid out, and thereupon the petitioners became entitled under the foregoing provisions of section fourteen of the act of 1895 to apply to the court for an order directing the commissioners to ascertain their damages and duly make an award for the same.

Section fourteen provides, in substance, that as often as the local authorities shall institute proceedings to open a street shown upon the general map or plan, which shall be contiguous to or in the neighborhood of any parcel of ground fronting on a discontinued street, the court shall appoint commissioners of estimate and assessment to ascertain damages and make an award.

There is one other act of the legislature having a direct bearing upon this proceeding. Chapter 712 of the Laws of 1896 is entitled "An act in relation to the final maps, plans and profiles of the twenty-third and twenty-fourth wards of the city of New York."

Section one reads as follows: "Sections one to twenty-eight, inclusive, of the final maps and profiles of the twenty-third and twenty-fourth wards of the city of New York,

adopted and established by the commissioner·of street improvements of the twenty-third and twenty-fourth wards, as changed, modified and altered by the board of street opening and improvement of the city of New York, which changes, modifications and alterations are hereby authorized, ratified and confirmed, filed in the various offices designated by law on or before January first, eighteen hundred and ninety-six, shall constitute the final maps and profiles of the street system of said wards, according to which said streets, avenues, roads, public squares, parks and places, and the grand boulevard and concourse shall be acquired, opened and improved, and every provision of law in relation to the laying out and establishment of said streets, avenues, roads, public squares, parks and places, and of the grand boulevard and concourse, and in relation to the making and filing of the final maps and profiles thereof, shall hereafter be deemed to have been complied with."

This legislation was designed to cure the irregularities which had occurred from the inception of this scheme under the act of 1890 and the later act of 1895, relating to the making and filing of the maps and profiles as provided by law.

The position of the city is that under the acts of 1890 and 1895 two methods of closing streets in the city of New York were provided by the legislature, of either one of which it could avail itself. This contention is clearly unsound. The act of 1890 contained no scheme for the closing of streets in the twenty-third and twenty-fourth wards. It is an act providing for the laying out of streets in this extensive territory which renders necessary the discontinuance of old streets that might interfere with the execution of the new plan. The act of 1895 obviously supplemented the act of 1890 by providing a detailed scheme for discontinuing and closing streets.

The city assumes the additional position that even under the act of 1895 it performed no act that would close the streets, as matter of law, that are proposed to be discontinued. In other words, that the act of 1895 is not self-executing.

There are two answers to this position. Assuming that the

acts of 1890 and 1895 must be read together the filing of the maps and plans by the very terms of the later act is, as matter of law, a discontinuance of the old streets omitted from the maps so filed.    The only limitation placed upon the property owner is that he cannot move to have his damages assessed as to a street in use until the city actually institutes proceedings to acquire the title to at least one street in the plot or square, including the premises alleged to have been damaged.    The petitioners have brought the proceeding within this provision and the filing of section fourteen of these maps after the act of 1895 took effect, although prepared to some extent before that date, was an affirmative act on the part of the city that resulted in rendering the streets proposed to be laid out and the streets to be discontinued in the language of section two of the act of 1895 "final and conclusive."

The city makes the further point, which seems to have been given great weight by the Special Term, that the discontinued and closed streets were not omitted from the maps filed as required by section two of the act of 1895.    While there was not a literal compliance with the statute in this regard, there has been a substantial compliance.    The newly laid out streets were shown in one color and the discontinued streets in another.    The literal reading of the statute undoubtedly required that the discontinued streets should not appear upon these maps, but as they were ultimately filed they show to the eye, at a glance, those streets that are new and those that are discontinued.

It would be a narrow and unreasonable construction to hold that the decision of the case should turn on this slight error of the engineer having in charge the preparation of the maps. Furthermore the act of 1896 (Chap. 712) was clearly intended to cure such irregularities.

If the argument of the learned corporation counsel is sound, that notwithstanding the filing of these maps no street can be declared closed and discontinued until it is actually and physically closed, the result would be a great hardship to property owners.    After the city had filed a map which showed the

street to be closed and discontinued, it would naturally prevent the owner from making improvements upon his property and would render it for the time being unsalable. It cannot fairly be assumed that the legislature contemplated placing the citizen in any such plight. The city is sufficiently protected by the provision which prevents the owner of property, as to a street in use, from asking that the damages to his private easements of light, air and access should be ascertained until the city seeks to open a new street on the plot of ground where the premises involved are located.

Attention has already been called to the fact that the act of 1895 took effect June 12th, 1895, and that section fourteen of these maps, which includes the premises in question, was not filed until December 17th, 1895.

The first question already quoted is, in substance, whether the filing of the maps by the city, after the act of 1895 took effect, operated to discontinue Morris avenue in front of the premises in question. This question is answered in the affirmative.

The second question relates to the failure to physically omit from the map filed the discontinued streets. That question asks, in substance, whether Morris avenue in front of the petitioners' premises was omitted from the final map of section fourteen. In view of the suggestion already made, that there was a substantial compliance with the statute in that regard, this question should be answered, as matter of law, in the affirmative.

The order appealed from should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, HAIGHT, MARTIN, VANN. and LANDON, JJ., concur.

Order affirmed.