### In re WALTON AVENUE IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   July 7, 1911.)

MUNICIPAL CORPORATIONS (§ 404*)—STREETS—DISCONTINUANCE—COMPENSA-
TION—LIMITATIONS—"OWNER AFFECTED."

Laws 1895, c. 1006, § 2, authorized local authorities to lay out streets, avenues, and roads in a city and file a map or plan, and provided that on and after the filing of a map, the streets, avenues, and roads shown thereon shall be the only lawful streets, avenues, and roads in that section of the city, and the thoroughfares theretofore laid out dedicated or established not shown thereon, and not then actually open and in use, shall not after the filing of such map or plan cease to be or remain for any purpose a street, avenue, highway, or thoroughfare. Section 5 provided for the filing of claims because of damages by discontinuing streets within six years after the filing of the map showing such discontinuance by any "owner affected," or that such claim should be barred. *Held* that, as to streets and highways not actually used at the time of the filing of the map as provided and which are to be closed, an owner of adjoining land does not become an "owner affected" by the closing of the street until the closing actually takes place, and hence limitations as to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his right to claim damages for the subsequent closing of the street run from the date of closing, and not from the filing of the map.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 404.*

For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]

Appeal from Special Term, New York County.

Application by the City of New York for discontinuance of Walton Avenue from 167th street to Tremont avenue. From an order referring to Commissioners of Estimate and Assessment the determination of a claim of J. A. Dimelow for compensation for closing and discontinuing the street, the City appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

James Regan FitzGerald, for appellant.
Benjamin Trapnell, for respondent.

SCOTT, J. This appeal presents a question under the much discussed street closing act (Laws 1895, c. 1006), which has not heretofore been presented for judicial consideration. That question is as to when the owner of property affected by the closing of a street must file a claim for such damages as he may have sustained thereby, when the actual closing does not take place until more than six years after the filing of the general map or plan indicating an intention that such street shall be closed and discontinued. The act itself contains a limitation of time for filing claims, being six years after the filing of the map indicating such closing, and the point we have to determine is whether or not that limitation applies to a case like the present. The street closing act was passed to meet a condition of very serious confusion which prevailed in that portion of the city of New York lying north of the Harlem river, and now known as the borough of the Bronx, for, although the act is general in terms, its principal application is to the territory indicated. Originally the city of New York lay wholly south of the Harlem river, being confined to Manhattan Island and the adjacent waters and islands. From time to time, as the population increased, parts of Westchester county lying north of the Harlem river were added to the city and county of New York, being known for years as the "Annexed Territory," or the Twenty-Third and Twenty-Fourth wards. The territory thus added embraced a number of villages and hamlets, and large tracts of land had been laid out by the owners thereof upon maps duly filed, with streets and avenues indicated thereon. Few of the streets and avenues thus indicated had been actually opened for travel, but many conveyances had been made in which the property conveyed was described with reference to such maps, and in which the lots conveyed were bounded upon said projected streets and avenues, thereby giving to the grantees private easements over them for street uses. There were also a great number of roads and highways in actual use as to which the abutting owners had easements. In time it became desirable to adopt a system-

atic plan of streets and avenues and other highways to cover the whole territory, and to fit it for urban uses, and acts were passed authorizing the public authorities to prepare and adopt such a comprehensive system, and to make and file maps thereof. This was accordingly done. As was inevitable, such a comprehensive and systematic scheme of streets, avenues, and highways conflicted in very many cases with the unsystematic scheme of streets and highways which had theretofore existed, and required the discontinuance and closing of many streets, avenues, and other highways then actually in use, or merely projected, and it became necessary to provide for their legal closing. To effect this the act of 1895 was passed. The framers of that act had two kinds of highways to deal with, those in actual use, and those merely projected and laid out on filed maps. In both cases the abutting owners had or might have claims for damage arising out of the discontinuance of the highway in which they held easements. These two kinds of highways required different treatment. As to those which were merely projected and laid down on some map, but were not and never had been in actual use, there was no obstacle to immediately divesting them of their character as highways, and whatever damage the abutting owner might suffer thereby would accrue at once. As to those highways, however, in actual use, it was deemed to be impracticable to discontinue them, until some new access to the property which abutted upon them was provided under the new plan of streets and avenues. The act therefore provided (in its second section) that the local authorities authorized by law to lay out streets, avenues, and roads in a city or any district thereof, and to file a map or plan showing the same, should upon any map so made and filed designate only the streets, avenues, and roads to be laid out and continued, omitting therefrom all former streets, avenues, roads, alleys, highways, lanes, and thoroughfares which they might determine to discontinue or close. It was then provided that:

"Upon and after the filing of such map the streets, avenues and roads shown thereon, shall be the only lawful streets, avenues and roads in that section of the city shown upon such map or plan, and all other former streets, avenues, roads, highways, alleys, lanes and thoroughfares theretofore laid out, dedicated or established not shown thereon, and which are not then actually open or in public use, shall, from and after the filing of such map or plan cease to be or remain for any purpose whatever, a street, avenue, highway, road, alley, lane or thoroughfare."

This provided for the cases of projected streets and avenues laid down on some map or plan, but not actually open and in use. All such became legally closed and discontinued at once, and whatever damage the abutting owners suffered by reason of the destruction of their private easements accrued at once upon the filing of the map or plan.

As to existing streets, avenues, etc., in actual use when the general map or plan was filed, a different provision was made, as follows:

"But in all cases where any such street, avenue, road, highway, lane, alley, or thoroughfare is, at the time of the filing of such permanent map or plan actually open and in public use, such parts or portions thereof as are included within the boundaries of any square or plot of ground made by the intersection of any streets, avenues or roads laid out by the local authori-

ties upon the permanent map or plan of said city or district thereof in which such square or plot is situated, shall ever after any one of the streets, avenues or roads bounding such plot or square shall be opened, cease to be or remain for any purpose whatever a street, avenue, road, highway, lane, alley or thoroughfare."

Thus in case of a street, road, etc., actually opened and in use when the permanent map or plan is filed, the legal as well as the physical closing is postponed until the opening of a street or avenue bounding the plot or square, and whatever damage is worked to an abutting owner in consequence of the closing accrues at the time of the legal closing and to the person then owning such abutting property. Provision is made for ascertaining the damage sustained by abutting owners either upon application of the corporation counsel or upon application of an aggrieved property owner. It is, however, provided:

"That within six years after the filing of such map (meaning the permanent map or plan) any owner or owners interested in and affected by such discontinuance and closing shall present to the chief financial officer or comptroller of such city a written statement or claim for compensation, and a request that such proceeding be instituted for the ascertainment and determination thereof, or be forever barred from claiming compensation for such closing and discontinuance." Section 5.

We have already held that this provision applies to the case of an owner of land abutting upon a projected street, road, or avenue not actually in use when the permanent map or plan was filed, and which therefore became ipso facto legally discontinued on the filing of the map, for it was then that the injury was occasioned and the damages accrued. Matter of City of New York, Richard Street, 138 App. Div. 821, 123 N. Y. Supp. 438; Matter of Grote Street, 139 App. Div. 69, 123 N. Y. Supp. 619. We are now, however, presented with a very different state of affairs. The petitioner's property abuts upon an old street known as Hawkstone street, which was indicated on the permanent map filed November 2, 1905, as a street to be closed and discontinued. That portion of it upon which petitioner's land abutted was shown on the permanent map or plan as contained within a block or plot bounded by Walton avenue, Townsend avenue, East 172d and East 174th streets, no one of which was then actually open and in public use. Hawkstone street was then open and in public use, and it consequently did not become legally closed and discontinued until one of the streets or avenues bounding said block or plot became opened, which was not until July 5, 1905, much more than six years after the permanent map or plan had been filed. We think that it is quite evident that the limitation contained in section 5 of the act requiring a claim to be filed within six years after the filing of the permanent map or plan does not, and cannot, apply to such a case as this. The language of that section is that an owner or owners interested and affected by discontinuance and closing must file a claim within six years. The owner affected by the closing of a street is the person who is the owner when the closing takes place, in this case the person who was the owner when 172d street was opened on July 5, 1905. This was the view taken by Mr. Justice Laughlin in a comprehensive opinion upon the construction of the street closing act, which was in effect adopted by the Court of Appeals. Matter of Walton Avenue,

131 App. Div. 696, 116 N. Y. Supp. 471; 197 N. Y. 518, 90 N. E. 59. In the course of that opinion he had occasion to consider the case of certain claimants who had filed claims before the street upon which their property abutted had been legally closed by the actual opening of a street bounding the block on the permanent map on which their property lay. He said:

"All of the other claimants, therefore, at the time of presenting their claims still retained the same right to use the streets which are to be discontinued that they theretofore enjoyed, and their claims were prematurely filed before any right of damages had accrued." Page 721 of 131 App. Div., page 490 of 116 N. Y. Supp.

The presiding justice in the same case, although not concurring in all respects with the prevailing opinion, did agree with so much of the opinion as is quoted above, saying:

"But the moment a street becomes a discontinued street under this provision of the statute then the damage caused to the abutting property by the discontinuance of the street at once accrues, and it is the damage sustained at the time the street becomes an actually closed street to which the abutting owner is entitled. Matter of Mayor, &c., of New York, 166 N. Y. 495 [60 N. E. 180]." Page 725 of 131 App. Div., page 493 of 116 N. Y. Supp.

We think it quite clear that an abutting owner under the circumstances of this particular case cannot be brought within the limitation prescribed by section 5 of the act. Until the street upon which his property abuts is actually closed, he is neither aggrieved by the closing, nor can he claim damages therefor. He cannot file a claim until he is damaged, and, if the street upon which his property abuts is not closed for ten years after the filing of the permanent map or plan, he certainly cannot file a claim within six years thereafter. Whether there be any limitation upon the time within which he must file his claim it is not necessary now to determine. It may be that by analogy the limitation upon him would be held to be six years after the actual closing of the discontinued street. It is not, however, of the highest importance, because the corporation counsel has ample power under the act to initiate the proceedings and thus cut off the running of claims.

The order appealed from must be affirmed, with $10 costs and disbursements. All concur.