Order affirmed, with $10 costs and disbursements. All concur.

---

## In re WALTON AVE.

(Supreme Court, Appellate Division, First Department. April 23, 1909.)

1. MUNICIPAL CORPORATIONS (§ 657*)—STREETS—DISCONTINUANCE—STATUTORY AUTHORITY—EFFECT.

   Laws 1895, p. 2037, c. 1006, authorizing the discontinuance of streets in the manner therein provided, provides for the destruction of public and private easements in the discontinued streets.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 657.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. EMINENT DOMAIN (§ 174\*)—VACATION OF STREETS—STATUTES—DAMAGES.**

Laws 1895, p. 2037, c. 1006, authorizes the discontinuance and the laying out of streets by the filing of a map indicating the permanent streets and omitting the discontinued streets, and provides that any discontinued streets actually open and included within any square made by streets laid out on the map shall cease after one of the streets shall be opened. A map created a new block bounded by a street actually open at the time and by new streets indicated on the map. The discontinued streets were actually in use at the time. *Held*, that the effect of the map was to permanently close the discontinued streets within the new block, and the owners were entitled to damages as of the date of the filing of the map, as against a contention that no damages accrued until one of the new streets was actually physically opened for use.

· [Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. §.174.\*]

**3. DEDICATION (§ 44\*)—ACTS CONSTITUTING DEDICATION—EVIDENCE.**

Evidence *held* to show that streets discontinued by a map filed pursuant to Laws 1895, p. 2037, c. 1006, authorizing the discontinuance and the laying out of streets, were public streets by virtue of a dedication and an acceptance authorizing compensation for their discontinuance.

[Ed. Note.—For other cases, see Dedication, Dec. Dig. § 44.\*]

**4. DEDICATION (§ 53\*)—STREETS—RIGHTS ACQUIRED.**

The dedication of land for a street and an acceptance thereof by the city authorities do not vest the fee in the city, though·it has authority to acquire the fee to streets. ·

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 97 ; Dec. Dig. § 53.\*]

**5. EMINENT DOMAIN (§ 231\*)—PUBLIC IMPROVEMENTS—DISCONTINUING STREETS —DAMAGES—PROCEEDINGS FOR ASSESSMENT.**

· Commissioners awarding damages for the discontinuance of streets, pursuant to Laws 1895, p. 2037, c. 1006, authorizing the discontinuance and ·the laying out of new streets by filing a map indicating the permanent streets and omitting ·the· discontinued ·streets, properly assumed that awards in proceedings to acquire land for new streets, designated on the map discontinuing the streets, were made on the proper basis, and they could not speculate as to what additional compensation the owners received in the condemnation proceedings over and above that to which they were legally entitled.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 231.\*]

**6. EMINENT DOMAIN (§ 75\*) — PAYMENT BEFORE TAKING — CONDEMNATION BY MUNICIPALITY.**

Ordinarily, where lands or easements therein are acquired for public purposes, ·the ·private title or easements are not extinguished until just compensation has been made; but, where the right of eminent domain is exercised by the state or a political division thereof, the legislation may provide for the extinguishment of the title and easements in advance of compensation, provided that the owner, as a substitute for his property, is given an adequate remedy for damages.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 198, 199 ; Dec. Dig. § 75.\*] ·

**7. EMINENT DOMAIN (§ 153\*)—DISCONTINUANCE OF STREETS—COMPENSATION— ASSESSMENT.**

Under Laws 1895, p. 2037, .c. 1006, authorizing the discontinuance of streets extinguishing public and private easements in discontinued streets, requiring the corporation counsel to institute proceedings to determine just compensation, etc., the right to compensation for discontinuing a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

street accrues the moment the street becomes legally closed, whether the street is then actually closed or not.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 153.*]

8. EMINENT DOMAIN (§ 127*)—PUBLIC IMPROVEMENTS—VACATION OF STREET—COMPENSATION.

The just compensation to which each owner is entitled for the discontinuance of a street is the depreciation in value of his land by the closing of the street.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 127.*]

9. EMINENT DOMAIN (§ 235*)—PUBLIC IMPROVEMENTS—AWARD OF DAMAGES—OBJECTIONS.

A specific objection by a city to the award of damages for the discontinuance of streets on the ground that the award was made on the erroneous theory that a street was closed was not a waiver of a general objection challenging the award on the ground that the petitioner had not shown that he was legally entitled to receive any award and that the evidence was insufficient to justify the award or any portion thereof.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 235.*]

10. EMINENT DOMAIN (§ 200*)—PUBLIC IMPROVEMENTS—COMPENSATION—BURDEN OF PROOF.

One seeking damages for the discontinuance of streets pursuant to Laws 1895, p. 2037, c. 1006, authorizing the discontinuance of streets, is the moving party and must show his title and his damages.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 200.*]

11. EMINENT DOMAIN (§ 269*)—PUBLIC IMPROVEMENTS—COMPENSATION—CLAIMS—SUFFICIENCY.

Under Laws 1895, p. 2037, c. 1006, authorizing compensation for the discontinuance of streets, requiring persons claiming compensation to present to the chief financial officer of the city a written claim for compensation with a request that proceedings be instituted for the determination thereof, etc., the object of a claim for damages is not to procure a settlement thereof, but to have proceedings instituted to ascertain the damages, and it is not vital to the validity of a claim for damages that the claimant should state with accuracy the amount of damages claimed.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 269.*]

12. EMINENT DOMAIN (§ 85*)—PUBLIC IMPROVEMENTS—VACATION OF STREET—COMPENSATION—STATUTES—CONSTRUCTION.

Laws 1895, p. 2037, c. 1006, providing for compensation for the discontinuance of streets, pursuant to the act, authorizes compensation for the closing of a part of a street, and making the remainder thereof a cul-de-sac, thereby legally closing an outlet, and depreciating the value of adjacent land.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 222; Dec. Dig. § 85.*]

13. EMINENT DOMAIN (§ 233*)—PUBLIC IMPROVEMENTS—COMPENSATION—AWARD—JURISDICTION.

The jurisdiction of the commissioners appointed pursuant to Laws 1895, p. 2037, c. 1006, to make compensation for the discontinuance of streets under the act, is limited by the order pursuant to the act to petitioners only.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 233.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

14. EMINENT DOMAIN. (§ 127*)—PUBLIC IMPROVEMENTS—DISCONTINUANCE OF STREETS—COMPENSATION.

Where the claimant for damages for the discontinuance of a street, pursuant to Laws 1895, p. 2037, c. 1006, was the owner of the fee of the street discontinued, his damages must be assessed on the basis of the extinguishment of a public easement only.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 127.*]

15. EMINENT DOMAIN (§ 174*)—DISCONTINUANCE OF STREETS.

Under Laws 1895, p. 2037, c. 1006, authorizing the discontinuance of streets and providing for compensation therefor, streets in use are not discontinued until at least one street, bounding the block through which the discontinued street ran, is opened for public use.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 174.*]

Ingraham, J., dissenting in part.

Appeal from Trial Term, New York County.

In the matter of the application of the Mayor, etc., of the City of New York, relative to the acquiring of title to land to open Walton avenue. From an order confirming a special report of the Commissioners of Estimate and Assessment, embracing awards for damages for the discontinuance of streets in the vicinity of Walton avenue, and assessing the amount of such awards, together with the costs and expenses of the proceedings on the lands benefited by the discontinuance of the streets, the City of New York and Henry D. Clark, a property owner, appeal. Affirmed in part, and reversed and remitted in part.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, and HOUGHTON, JJ.

Thomas C. Blake (John P. Dunn, on the brief), for appellant City of New York.

Joseph A. Flannery, for appellant Henry D. Clark, and for said Clark and certain others as respondents.

Harold Swain, for respondents Margaret E. Webber and others.

James A. Deering, for respondents James A. Woolf and others.

Walter S. Newhouse, for respondent August P. Windolph.

Charles V. Gabriel, for respondent Louis Brass.

LAUGHLIN, J. On the 18th day of March, 1897, an order was duly made and entered, appointing commissioners of estimate and assessment in proceedings for the opening and laying out of Walton avenue from East 167th street to Tremont avenue. Thereafter, from time to time, orders were made, on the application of property owners or of persons claiming to be interested in premises alleged to have been damaged by the discontinuance of certain streets in the vicinity of Walton avenue, appointing the same commissioners as commissioners to ascertain and determine the compensation to be awarded to the respective petitioners and to report the same to the court, pursuant to the provisions of section 14 of chapter 1006, p. 2051, of the Laws of 1895. The commissioners heard the claims and filed a special report on the 5th day of December, 1905. The city filed certain objections to the entire report awarding damages, and appellant Clark filed objections

to one of the awards. The objections were overruled, and the report was confirmed without modification. On the objections thus filed by the city questions are presented on this appeal with respect to whether rights to compensation for closing the streets have accrued, with respect to whether the streets were public streets and were open and in use as such, with respect to whether certain claimants were regularly before the commissioners and entitled to have their claims considered, and whether they were bound as to the amount of damages by the claims filed.

It is advisable to consider at the outset the statute under which Walton avenue was laid out and the streets are claimed to have been discontinued and the proceedings for ascertaining the damages sustained by closing the streets have been instituted.

Section 9 of the final maps of the Twenty-Third and Twenty-Fourth wards of the city of New York was duly filed in the various offices required by law on the 2d day of November, 1895. This map was validated by chapter 712, p. 859, of the Laws of 1896. See Matter of Mayor, 166 N. Y. 495–503, 60 N. E. 180. It had been prepared pursuant to the provisions of chapter 545, p. 965, of the Laws of 1890, as amended. By this map, part of Walton avenue described in this proceeding was laid out as a new proposed avenue. On the 12th day of June, 1895, prior to the filing of the map, chapter 1006, p. 2037, of the Laws of that year became in force. That act, in form, was general, and applied to the discontinuance and closing of streets, avenues, roads, highways, alleys, lanes, and thoroughfares in cities of more than 1,-250,000 inhabitants, but, inasmuch as the city of New York was the only city having the population specified, its immediate application was to the city of New York only. The first section of the act authorized the local authorities of the city, in the manner therein provided, to discontinue—

"such streets, avenues, roads, highways, alleys, lanes and thoroughfares therein as they may deem to be necessary in order to more effectually secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues and public places therein, or where other public necessity, in the judgment of such local authorities, requires the discontinuance thereof in whole or in part. The local authorities referred to in this act are the department, commissioner, board or officer heretofore authorized or which may be hereafter authorized by law to lay out streets, avenues, public squares or places in that part or section of the said city in which such discontinuance has been or shall be proposed or determined."

The map was filed by the local authorities authorized to lay out streets, avenues, public squares, and places in the section of the city to which it relates, and this is not questioned. Section 2 of the act of 1895 provides as follows:

"Sec. 2. The local authorities authorized by law to lay out, open, extend, alter or improve streets, avenues, and roads in any such city or district thereof and to make and file a map or plan showing the streets, avenues and roads so laid out, opened, altered, extended or improved shall, upon any map so made and filed by them, designate only the streets, avenues and roads, which they may determine to so lay out, open, alter, extend or otherwise improve as the permanent streets, avenues and roads in and for such city, or for the particular district or section thereof shown upon such map or plan, omitting therefrom all such former streets, avenues, roads, highways, alleys, lanes

and thoroughfares which they may determine to discontinue or close. They shall also upon said map designate the public parks, parkways, squares, places and other public ways which they may determine to lay out and establish. Upon and after the filing of such map, the streets, avenues and roads shown thereon shall be the only lawful streets, avenues and roads in that section of such city shown upon such map or plan, and all other former streets, avenues roads, highways, alleys, lanes and thoroughfares theretofore laid out, dedicated or established not shown thereon, and which are not then actually open or in public use, shall from and after the filing of such map or plan cease to be or remain for any purpose whatever, a street, avenue, highway, road, alley, lane or thoroughfare, and the owner or owners of the fee of the land or soil within the boundaries thereof may thereupon enclose, use and occupy the same as fully as if the same had not been laid out, dedicated, established or used. But in all cases where any such street, avenue, road, highway, lane, alley or thoroughfare is at the time of the filing of such permanent map or plan actually open and in public use, such parts or portions thereof as are included within the boundaries of any square or plot of ground made by the intersection of any streets, avenues or roads laid out by the local authorities upon the permanent map or plan of said city or district thereof in which such square or plot is situated, shall ever after any one of the streets, avenues or roads bounding such square or plot shall be opened, cease to be or remain for any purpose whatever a street, avenue, road, highway, lane, alley or thoroughfare, and the owner in fee of the land or soil within the boundaries thereof may thereupon enclose, use and occupy the same as fully as if the same had not been laid out, dedicated, established or used. The provisions of this section shall apply to all streets, avenues, roads, highways, alleys, lanes and thoroughfares or parts or portions thereof which have not been retained or shown upon any map or plan heretofore made and filed by or on behalf of the local authorities of such city as part of the permanent system of public streets, avenues, roads, public squares and places in and for that part of such city included within the district laid out upon such map or plan, and which have not been thereafter re-established by law or relaid out or otherwise thereafter lawfully laid out and established. But nothing in this act contained shall be construed as authorizing the local authorities to alter or change the general or permanent map or plan of said city or any portion thereof by laying out new streets, avenues, public squares or places, or altering, amending, extending or otherwise improving the streets, avenues. public squares and places heretofore laid out upon the permanent or general plan of such city otherwise than in the manner now provided by existing laws."

It must be now regarded as the settled construction of the statute that the Legislature intended to provide not only for the destruction of public easements but of private easements in the discontinued streets as well. Matter of Mayor, 95 App. Div. 533, 88 N. Y. Supp. 769; Id., 119 App. Div. 882, 104 N. Y. Supp. 1133, affirmed 189 N. Y. 551, 82 N. E. 1133. Said section 9 of the final maps of the Twenty-Third and Twenty-Fourth wards continued Jerome avenue as it then existed, and laid out Walton avenue, running parallel therewith about 450 feet southerly therefrom, and laid out Townsend avenue between them and parallel with them from East 170th street, continuing beyond East 174th street. It also laid out, some distance to the south of Walton avenue, a grand boulevard and concourse, running for the most part in the same general direction. It laid out certain other streets at right angles to Jerome and Walton avenues, extending between Jerome avenue and Grand Boulevard and Concourse. The streets in this section of the city, with the exception of Jerome avenue, prior to the filing of said map, ran in the main at angles of about 45 degrees to Jerome avenue and to the streets continued or laid out by this map. In other

words, the effect of the map was to change the course of streets in that section about 45 degrees by closing some and laying out others. This map leaves, or rather creates, one new block bounded by Jerome avenue on the northwest, by Belmont street on the northeast, by Townsend avenue on the southeast, and by East 172d street on the southwest. It will, I think, tend to facilitate a clear understanding of the questions presented to consider first the awards for lands within this new block. Parts of Seventh and Eighth avenues and of Walnut street, as they formerly existed, were within the boundary lines of this block, and as they were not continued on said map it was intended thereby to discontinue them. The owners of property in this block contended, and gave evidence tending to show, that those avenues and this street were at that time opened and in use as public streets. The city controverts that proposition, and the questions thus arising will be considered presently, but, for the purpose of presenting and deciding another proposition, it will be assumed for the present that they were at the time of the filing of the map public streets, opened and in use as such. Jerome avenue had been duly laid out, acquired, and opened, and was in use as a public street at the time this map was filed. The commissioners proceeded upon the theory that, since it bounded this new block on one side, the effect of filing the map was, by virtue of section 2 of the act of 1895, herein quoted, to permanently close the parts of these avenues and of Walnut street within that block, and they have estimated the damages of the property owners as of the date of filing the map. The city contends that this was error, and that, assuming these avenues and this street to have been open and existing streets, they were not closed and will not be closed until one of the other three streets bounding the new block, which are laid out on the map and which were not streets at the time of filing it, shall have been acquired by the city and actually physically opened up as public streets, and that until such time no damages will accrue to the property owners. I am of opinion that in this regard the commissioners proceeded upon the right theory. There are some expressions in the opinion of the Court of Appeals in Matter of Mayor, etc., 166 N. Y. 495, 60 N. E. 180, which are drawn to our attention as tending to hold the contrary. The court, however, was not considering this question, and evidently did not have the point in mind. It will be observed that section 2 of the act in question regards the streets shown upon the map filed as laid out by the local authorities who filed the map, regardless of the question as to whether such streets were then public streets and merely continued on the map, or whether they were new streets which had been neither dedicated as streets nor acquired for public street purposes by the city. The statute appears to have been framed upon the theory that, although some of the streets shown upon the map may have existed as public streets theretofore, the act of the local authorities in thus continuing them upon the map brought them within the permanent plan of public streets and more effectually insured their continuance as such. In short, it placed them in the class of permanent streets, and that act was deemed by the Legislature to constitute laying the streets out on the permanent plan. It is quite clear, even upon the theory of the learned counsel for the city,

that if Jerome avenue at the time the map was filed had not been a public street, actually opened and used as such, but the moment after the map was filed became a public street and was opened by and used as such, the parts of streets and avenues within the block bounding thereon would thereupon become discontinued, and the right of the property owners to damages would at once accrue. It is not questioned that it was competent for the Legislature to close any of these streets before new streets were opened, giving access to property abutting on the discontinued streets, leaving the property owner to his remedy for compensation as prescribed in the act; and that proposition would seem to be affirmed by the decision of the Court of Appeals sustaining the constitutionality of the act. The contention of the learned counsel for the city in this regard is that the Legislature did not intend to do so. It is manifest that the Legislature attempted to preserve a means of access to property owners in part by providing that an existing street which was opened and in use at the time the map was filed should not be deemed closed until one of the streets bounding the block should be opened; but it is evident that this would not afford access in all cases to lands fronting upon the discontinued streets, nor would the opening of all the new streets in all instances afford access to lands which previously had a frontage on a discontinued street. It is neither claimed that a street could not be discontinued until all of the streets bounding the block within which it was to be discontinued had been opened, nor that it could not be deemed discontinued as to any particular parcel of land until that parcel had an outlet upon a new street which had been opened for use. The constitutionality of the statute is not questioned, and therefore will not be considered. The parties merely differ with respect to the construction of it. I fail to see any logic in the construction for which the city contends. If the parts of existing streets within a block bounded entirely by new streets become legally discontinued as soon as the city acquires and opens any one of the streets bounding the block or part of it, then the streets within this block should be deemed discontinued forthwith upon the filing of the map showing the continuance of Jerome avenue on the permanent plan, bounding the block on one side, for that avenue was then a public street and opened and in use as such. The learned counsel for the city bases his argument principally upon the fact that in said section 2, herein quoted, the future tense is used in the clause, "shall ever after any one of the streets, avenues or roads bounding such square or plot shall be opened, cease to be or remain for any purpose whatever a street." He contends that, if the Legislature intended that the existence of a public street then in use bounding the block should have the effect of closing the streets, it would have expressly so declared, and that by declaring that when one of the streets bounding the block "shall be opened" it must have had reference to streets not already opened. That, I think, would be a technical construction, and not in accordance with the spirit and intent of the act.

The learned counsel for the city further contends, as already observed, that Seventh and Eighth avenues and Walnut street were not public streets. It is not claimed that the city ever acquired title to the streets. The theory of the respondents is that they became public

streets by dedication and acceptance. These lands were formerly within the village of Mt. Eden in the county of Westchester. On the 21st day of September, 1853, a map was filed in the office of the clerk of the county of Westchester purporting to be "A Map of the Village of Mount Eden near Upper Morrisania Depot in the Town of West Farms, County of Westchester, and State of New York. 1858. The property of Mrs. Margaret Woolf and Sons," showing that the survey thereof had been made by R. Henwood. This map showed these avenues and this street. Thereafter and on the 13th day of December, 1859, another map of the village of Mt. Eden was filed in the same office, showing, so far as material to the questions presented, the same property and the same streets and avenues, and indicating that the property was then owned by Thomas Woolf and brothers. These maps showed the property subdivided into village lots fronting on the various streets and avenues shown thereon. The owners thereafter sold and conveyed these lots to the present claimants or to their predecessors in title, describing the premises by subdivision lot numbers, and expressly bounding the same on the streets and avenues. The village of Mt. Eden became part of the city of New York in or prior to 1874 (see chapter 329, p. 432, Laws 1874). Pursuant to the provisions of chapter 604, p. 831, of the Laws of that year, and of chapter 436, p. 461, of the Laws of 1876, a map was made and filed in the department of public parks on the 21st day of February, 1879, showing, among others, these avenues and this street as then existing and continuing the existence thereof, the avenues, however, bearing new names with the old avenue numbers shown in black ink but crossed out. The map bears the following indorsement:

"Map or plan with field notes and explanatory remarks, showing the location, width, windings, courses and classification of streets, roads and avenues and public parks or places within that part of the Twenty-fourth and adjoining part of the Twenty-third Ward of the City of New York, bounded on the west by Jerome or Central Avenue, on the north by Woodlawn Cemetery and north side of Polham Avenue, on the east by the New York and Harlem Railroad, Hoffman Street, Fordham and Third Avenues and on the south by 161st Street in Morrisania, designated The Central District, as laid out and classified and discontinued and closed by The Commissioners of the Department of Public Parks of the City of New York, in pursuance of the provisions of Chapter 604 of the Laws of 1874 and Chapter 436 of the Laws of 1876.

"Dated New York, April 17th, 1878.

"[Signed]   Julius Munchwitz, Superintending Architect.
"[Signed]   E. B. Van Winkle, Topographical Engineer."

Extract from field notes and explanatory remarks:

"The Streets, Roads and Avenues laid out by the commissioners of the Department of Public Parks, are indicated by red color, the side lines thereof by full red lines and the widths of the same by red figures.

"The Roads and portions of Roads which are discontinued and closed by said Commissioners are indicated by india ink shading.

"The Streets which are designated on this map as streets of the first, second and third class are indicated by the Roman Numerals I, II, III, respectively.

"Existing Streets, Roads and Avenues and the names by which they have heretofore been known are indicated by black lines and letters.

"Filed in the Department of Public Parks, February 21st, 1879. Filed in the office of the Register of the City of New York, February 28th, 1879.

"A. Porter Lord, Acting Secretary D. P. P."

Said chapter 604, p. 831, of the Laws of 1874, authorized the commissioners of the department of public parks to lay out, survey, and monument streets, roads, and avenues in that part of the city embracing this territory, and section 3 thereof provides as follows:

"The maps, plans and profiles of the said commissioners of the department of public parks, made and certified to as hereinbefore provided, shall be final and conclusive as to the location, width and grades of the streets, avenues and roads, public squares and places exhibited on such maps, plans and profiles, as well in respect to the mayor, aldermen and commonalty of the city of New York, as in respect to the owners and occupants of lands, tenements and hereditaments within the boundaries aforesaid, or affected by said streets, avenues, roads, public squares and places, and in respect to all other persons whomsoever."

The validity of this provision as a complete and final acceptance of a street theretofore dedicated but not accepted has been sustained by the courts. Matter of Dept. of Public Parks, 53 Hun, 556, 6 N. Y. Supp. 779; Matter of Jerome Ave., 120 App. Div. 297, 105 N. Y. Supp. 319; Matter of Mayor, 24 App. Div. 9, 49 N. Y. Supp. 119. Said section 9 of the final maps of streets in the Twenty-Third and Twenty-Fourth wards, filed on the 2d day of November, 1895, also shows these avenues and this street, but indicates that they have been closed and discontinued by that map. This evidence clearly indicates a recognition by the city authorities of these avenues and this street and an acceptance of any dedication thereof, provided there was a sufficient dedication to authorize its acceptance. It was held in Matter of Department of Public Parks, supra, that, where the park commissioners in 1877 filed a map adopting the lines of a certain street theretofore laid out on a map made and filed by a private owner of the property, their act constituted an acceptance of the dedication thus attempted to be made, and that even the prior occupation of a portion of the street by a grantee of the owner who had made the dedication was ineffectual to revoke the dedication before such acceptance, because the revocation could only be made by the grantor. Of course, a dedication by the owner and an acceptance by the city authorities did not vest the fee in the city, and the fact that authority was conferred to acquire the fee to streets shown on the map of the department of public parks in 1879 does not militate against the dedication and acceptance of the easements for public street purposes. The city offered no evidence on the question of user of these avenues or of this street. The property owners gave evidence tending to show that the avenues and street in question, and in fact all of the avenues and streets on the maps of the village of Mt. Eden, were open and in use by the public for a long period of years prior to 1893. One of the city's experts testified that he had been familiar with this section for upwards of 50 years, and after testifying specifically that Seventh avenue had been opened and used by the public for over 35 years prior to 1902, and had been improved by the town authorities of West Farms, said that his testimony with respect to that avenue would apply to all of the streets laid down on said maps of the village of Mt. Eden. One of the property owners testified that Fifth, Sixth, and Seventh avenues and Walnut street were in public use during

20 years prior to 1902 and that Walnut street was lighted by gas lamps. There was no evidence of any attempt on the part of the property owners to revoke the dedication attempted to be made by filing the maps. It has not been specifically shown that the beds of those streets and avenues have not been taxed, but, since the maps became public records and conveyances were made of the lots as abutting and bounding thereon, that would be a fair inference. It is quite clear, I think, that these avenues and this street were duly dedicated and were duly accepted by the city authorities, and that they were in use as public streets on the 2d day of November, 1895, when section 9 of the final maps of the Twenty-Third and Twenty-Fourth wards was filed.

The city further claims that the commissioners erred in their awards with respect to some of the parcels which are partly within this block and partly within the lines of one of the new streets, as laid out on said section 9 of the final maps of the Twenty-Third and Twenty-Fourth wards bounding it. As already observed, neither Townsend avenue nor East 172d street, which bound the block on two sides, were public streets when said maps were filed. The city showed that, by proceeding duly had under the charter, the title to Townsend avenue vested in the city for public street purposes on the 6th day of September, 1897, and East 172d street on the 4th day of December, 1897, and that proceedings were duly had to determine the awards to be made to the property owners, and that the awards had been made and confirmed. The city gave evidence tending to show that in those proceedings the owners of these parcels who now claim damages upon the theory that Seventh and Eighth avenues and Walnut street were closed on the 2d day of November, 1895, gave evidence of their damages to the parcels, part of which were taken in the proceedings to open Townsend avenue and East 172d street, upon the theory that Seventh and Eighth avenues and Walnut street were then open and that they had valuable easements therein of light, air, and access. After receiving this evidence, the commissioners in this proceeding refused to consider the basis upon which the other commissioners made their awards. They say with respect to this in their report:

"We have not considered it necessary to determine whether in street opening proceedings, where portions of plots for which we have awarded damages were acquired after such plots were damaged by the closing of streets on which they abutted, the awards were made in such proceedings on the assumption that such lands still had easements of light, air, and access over the streets for which we have awarded damages."

The city claims that this was error. It is not claimed that the record, other than the testimony in the other proceedings, showed that any of the awards were made upon the theory that Seventh and Eighth avenues and Walnut street were then open. The city does not claim that the landowners are estopped from now claiming that these avenues and this street were closed. It merely contends that the commissioners should have considered the fact that the landowners introduced evidence upon the theory that these avenues and this street were then open, and that it is probable that such evidence influenced the awards and resulted in an increase of the awards over the dam-

ages to which the owners were entitled upon the theory upon which the landowners have made claims in this proceeding, viz., that these avenues and this street were closed by filing the maps. There being no estoppel of record, it would seem that the commissioners in this proceeding acted upon the correct rule. The remedy of the city was to present the question in the other proceedings and have an adjudication of record thereon which would probably have constituted an estoppel. I think it should now be presumed that the awards in the other proceedings were made upon the proper basis, and that the commissioners in this proceeding were not at liberty to speculate as to what, if any, additional compensation the owners received in the other proceedings over and above that to which they were legally entitled upon the construction of the statute with respect to the time of closing adopted by the commissioners in this proceeding.

In determining the just compensation to be awarded to the owners of lands, the damage parcels show the parcels as they stood at the time the maps were filed which closed the avenues and street within the boundaries of this block. After the commencement of this proceeding and before the awards in question were made, the city acquired parts of some of these parcels for Townsend avenue and for 172d street, but, notwithstanding that fact, the damage parcels were considered intact, and evidence was received tending to show the damages to those parcels as they existed at the time the avenues and streets were legally closed, namely, the date of filing the map pursuant to the provisions of chapter 1006 of the Laws of 1895, and evidently the awards were made as of that date, without taking into consideration the fact that subsequently to that date parts of the parcels had been acquired by the city as aforesaid. As I understand the record, no question was raised on the hearing before the commissioners or at Special Term, or by the appellant in this court, with respect to the right of the owners to recover damages to the parcels as they existed at the time the avenues and streets became legally closed. The only claim made by the city in this regard was, as had already been stated, that the commissioners should have taken into consideration the probability that these landowners received awards in the other street opening proceedings on erroneous theories, and that, therefore, if awarded on the correct theory in this proceeding, they will receive more than just compensation. The city, of course, does not concede the correctness of the view herein expressed that the avenues and street in this block were closed upon the filing of the map, on account of the fact that Jerome avenue bounded the block in part and was a public street, opened and in use; but the city claims that if this be the proper construction of the statute, then these landowners received awards in the other proceedings upon an erroneous theory and will thereby obtain more than their actual damages. The right of the claimants to damages as of the time the avenues and street were legally closed, and to their respective parcels as they existed at that time, has been questioned, however, during the consideration of the appeal, and requires attention. I am of opinion that the parties and the commissioners proceeded upon the correct theory in this regard. The moment the avenues and street became legally closed, the right of the landowners to damages accrued by vir-

tue of the provisions of sections 4 and 14 of chapter 1006 of the Laws
of 1895. Ordinarily, where lands or easements therein are acquired
for public purposes, the private title or easements are not extinguished
until just compensation therefor has been made; but where the right
of eminent domain is exercised by the state or a political division of the
state, the Legislature at times provides for the extinguishment of the
title and easements at a fixed time in advance of the making of just
compensation, and gives the owner, as a substitute for his land or
easements, an adequate remedy for damages. Chapter 1006 of the
Laws of 1895 contemplates the extinguishment of both public and
private easements in discontinued streets in advance of the making of
just compensation, and upon the legal discontinuance of the street the
Legislature has, by section 4 of the statute, made it the duty of the
corporation counsel to forthwith institute condemnation proceedings
for determining the just compensation to be made for the interests ac-
quired; and by section 14 of the act, under which these claimants
are in court, either the corporation counsel or the property owners
could ask, in a proceeding of this nature, to have the just compensa-
tion that should be made for the closing of the street determined by
the commissioners appointed to open the contiguous street, which, Wal-
ton avenue concededly is. If, as I think, the right to compensation
accrued to the owners the moment the avenues and street became legal-
ly closed, then it is quite clear that the just compensation to which
they are entitled has to be made as of that time. Their damages con-
sisted in the depreciation of the value of their lands by the legal clos-
ing of the avenues and street and the termination of every right they
had to have them maintained as public avenues or streets or to use
the same for ingress or egress to their respective parcels. Whether
the owners of the fee of the discontinued avenues and street did or
did not inclose the same, as authorized by the statute, or prevent the
use of the same for ingress or egress to the parcels of the respective
claimants, therefore, is quite immaterial. The avenues and street be-
ing legally closed, the right to actually close them existed, and any
further user, if there was further user, which I think does not appear,
was by sufferance and not as matter of right. The statute being con-
stitutional, and the avenues and street having been legally closed, which
terminated the rights of the property owners therein, the Legislature
has substituted for those rights a claim for just compensation, to be
asserted under a statute. This was a personal claim which accrued
to the owner of the property at the time of the legal closing of the
avenues and street and the cutting off of his rights therein by the
filing of the map. The just compensation to which each owner is
entitled is the depreciation in value of his parcel of land by the legal
closing of the avenue or street, and the right thereto accrued at once,
without regard to the question as to whether the streets were there-
upon actually closed, as they might have been, or whether the prop-
erty owners were permitted to continue to use them, and regardless
of whether or not the owner continued to hold the title to the parcel
which was damaged by the closing of the avenue or street, or wheth-
er or not he thereafter parted with title voluntarily or title was taken
from him in invitum, for those considerations could not affect the

quantum of damages or the right thereto, which does not run with the land. King et al. v. Mayor, 102 N. Y. 171, 6 N. E. 395; Matter of Grade Crossing Commissioners, 64 App. Div. 71, 71 N. Y. Supp. 674, affirmed 169 N. Y. 605, 62 N. E. 1096; Johnson v. Pettit, 120 App. Div. 774, 105 N. Y. Supp. 730; Matter of City of New York (Newton Creek Bridge), 128 App. Div. 150, 112 N. Y. Supp. 531; Matter of Mayor (Trinity Avenue), 116 App. Div. 252, 101 N. Y. Supp. 613; Harris v. Kingston Realty Co., 116 App. Div. 704, 101 N. Y. Supp. 1104; Matter of Seventh Ave., 59 App. Div. 175, 69 N. Y. Supp. 63. See, also, Wenrenberg v. Seiferd, 125 App. Div. 527, 109 N. Y. Supp. 896. The city does not claim that on the evidence and upon this theory the awards for these parcels are excessive. It only claims, as already stated, that the commissioners should have taken into consideration the fact, which the city claims is indicated by the evidence before the commissioners in the other street opening proceedings, that in those proceedings these owners received awards upon a different theory, and that if they are now given awards on this theory it will result in their getting more than the amount to which they are entitled, and, in effect, to a certain extent, double damages; but, as has been observed, that question could not properly be considered by these commissioners.

If it were not for other special objections to some of the damage parcels in this block, which will be considered presently, these views would lead to an affirmance as to all parcels within the block in question which embraces parcels Nos. 24, 28, 29, 30, and 34. There are no further objections to the awards for parcels Nos. 28 and 30.

An award was made for damage parcel 29 to Henry D. Clark as owner. Clark is appellant with respect to an award made for another parcel not in this block, and is respondent with respect to this and one other appeal. The learned counsel for the city asserts in his points that no proof, either of Clark's title or of his damages to this parcel, was made. The learned counsel for Clark, as respondent, refers us to no part of the record containing such proof, and we have been unable to find any. The city, by its objections duly filed, challenged this and other awards upon the grounds, among others, that the petitioner had not shown that he was legally entitled to receive any award, and that the evidence was insufficient to justify the award or any portion thereof. A specific objection was also made in a separate paragraph to the effect that the award was made upon the erroneous theory that Seventh avenue was closed. That, however, was not a waiver of the general objection. The respondent Clark was the moving party, and it was incumbent upon him to show his title and his damages. Having failed to do so, the award must be vacated.

An award of $9,040 was made for damage parcel 24 in this block to Henry Edelmuth, as sole executor of Adolph Edelmuth. The objections filed to the report of the commissioners by the city relate to all of the parcels for which awards were made. The learned counsel for the city, in his statement of the facts, questions the jurisdiction of the commissioners to make an award for a greater sum than the amount specified in the claim filed by the comptroller, but a sep-

arate point presenting this question is not contained in his brief. The learned counsel for respondent Edelmuth, however, assumes that this question would be presented, and concedes that the claim filed with the comptroller, which is not in the record, was for $2,000 only. The commissioners, in their report with respect to this award, say:

"We have determined that Henry E. Edelmuth, as the executor of Adolph Edelmuth, deceased, is entitled to the award made for damage parcel No. 24, notwithstanding that said award is greater than the amount specified in the claim filed by him, as the claim filed by some of the parties who are beneficially interested in this award gave sufficient notice."

It is to be observed that the executor is acting in a representative capacity, and it is urged that the innocent beneficiaries should not in any event suffer on account of his failure to specify a claim for an adequate amount of damages. The statutory provision with respect to filing claims is contained in section 5 of said chapter 1006 of the Laws of 1895. It is not entirely clear, in my opinion, that this section relates to a street discontinued—as were the streets in question—by their omission as streets from a map showing a permanent plan of the streets to be retained and opened in a particular section of the wards in question, pursuant to the provisions of law applicable thereto. There is no room for argument that section 5, with respect to filing claims, relates only to streets discontinued pursuant to the provisions of section 3 of said act after the filing of a map or plan of permanent streets, for section 4 of the act requires that the city institute proceedings to ascertain the damages caused by the closing or discontinuance of streets which are closed or discontinued by the filing of a final map of a permanent plan pursuant to section 2, and a similar provision is contained in said section 5 with respect to streets discontinued or closed by filing any map pursuant to that act. This constitutes a repetition, unless section 5 relates to streets closed or discontinued as provided in section 3, in which case there would be reason for requiring the presentation of a claim because the landowner could not institute the proceedings himself, as he may here, where the plan involves opening new streets. Moreover, the claim is required to be filed, not to be audited as are other claims, but to have proceedings instituted by the city to have his damages appraised. But under section 14 the property owner may himself institute the proceeding, and hence there seems in those cases to be but little, if any, reason for requiring the city to institute it. Section 5 appears to have been deemed applicable to all such claims in the cases which have heretofore been before the court (Matter of Spuyten Duyvil, 116 N. Y. Supp. 857, and Matter of Mayor, 95 App. Div. 533, 88 N. Y. Supp. 769), and perhaps it is no longer an open question in this court.

It is, however, I think, unnecessary to consider this question further, for, assuming that it was necessary that the claim should be filed, I am of opinion that the claim filed was sufficient to authorize the commissioners to award the actual damages. The provision of section 5 with respect to filing claims is as follows:

"Provided, however, that within six years after the filing of such map any owner or owners interested and affected by such discontinuance and closing shall present to the chief financial officer or comptroller of such city a writ-

ten statement or claim for compensation, and a request that such proceeding be instituted for the ascertainment and determination thereof, or be forever barred from claiming compensation for such closing or discontinuance."

It is apparent that the object of the claim was not to procure a settlement thereof, but to have proceedings instituted to ascertain the damages sustained by the claimant. In that view, it seems that it was not vital to the validity of the claim that the claimant should state with accuracy the amount of the damages to which he deemed himself entitled.

Eighth avenue southerly of Jerome avenue was a cul-de-sac only a few hundred feet in length. The outlet to Jerome avenue was through this new block, through which it became legally closed by the filing of the map on the 2d of November, 1895, as has been shown. It ends opposite damage parcel 32, just southeast of the new Townsend avenue, as shown on said map. Damage parcels 32 and 33 are not in the block in question, but both front on Eighth avenue just beyond it. Their only outlet was through Eighth avenue northerly to Jerome avenue. This outlet became legally closed through the block within which streets became, according to the ruling already made herein, legally closed on the 2d day of November, 1895. The claims with respect to these two parcels, while not falling within the letter of the statute, fall within the fair intent and meaning thereof, because the part of Eighth avenue which remained open in front of those parcels was of no value as a means of ingress or egress to or from these parcels. I am of opinion that this construction will best accord with the legislative intent, and will be the most practicable. The only other construction that might be given is that Eighth avenue within the block became closed as to property owners within the block, but not as to other property owners. That would undoubtedly be a literal construction of the statute, but it would thwart the purpose of the Legislature in declaring that the part of the streets legally closed might be inclosed by the owner of the fee. I am of opinion that it was intended to terminate all public and private easements in that part of the street declared to be closed, and not merely to terminate those easements as to property owners within the same block and leave them outstanding as to other property owners, which would require that the streets remain open indefinitely, for there is no time limited within which the city must open the new streets, upon the opening of which only on this construction would the easements of these claimants in Eighth avenue through the block bounded by Jerome avenue be terminated. Another difficulty with this construction would be that the owner of a parcel in the block which we have been considering, or in a similar case who owned the fee of the discontinued street, would be awarded just compensation on the theory that he was at liberty to inclose the discontinued street, whereas he would be obliged to leave it open for ingress and egress to parcels of land in other blocks. These claimants were therefore entitled to have their damages assessed as of the date when their outlet through Eighth avenue was shut off by the closing of the northerly end thereof. The commissioners proceeded on this basis in making their awards, and I do not understand that the city seriously contends that this was an

erroneous theory, provided Eighth avenue within the block afore-
said became closed on the 2d day of November, 1895.

The claimants for the damages to damage parcels 32 and 34, the lat-
ter parcel being partly within the block in question, were Louis Brass
and Emilie Hamann. An ejectment action was pending in the Su-
preme Court between these parties. The heirs of Emilie Hamann duly
filed a claim and obtained an order to have their damages ascertained.
The commissioners directed the payment of an award equal to two-
thirds of the total amount of damages to these heirs, provided they be
successful in the ejectment suit and made no award as to the remain-
ing one-third interest, apparently upon the theory that the other heirs
entitled thereto were not before the commissioners; but in the event
that the heirs should be unsuccessful in the ejectment suit, they award-
ed the payment of the total damages to Louis Brass, and, with re-
spect to parcel 34, the commissioners made an award to two-thirds
of the damages to said heirs, provided they should be successful in
the ejectment suit, and made no award in the event they should be
unsuccessful. This was upon the theory, as stated by the commis-
sioners, that Louis Brass had obtained an order for the assessment
of his damages with respect to parcel 32, but not with respect to par-
cel 34. Louis Brass does not appeal, nor does he even appear as to
these parcels. The learned counsel for the city contends that no
order was obtained as to either parcel, and none is found in the record.
The only jurisdiction which the commissioners have to make an award
is by an order obtained pursuant to the provisions of section 14 of
the act of 1895, and by such orders they were limited to making awards
to the petitioners. As there is no order in the record authorizing the
commissioners to ascertain the compensation to which Louis Brass is
entitled, there was no jurisdiction to make an award to him, and there-
fore the alternative award made to him with respect to parcel 32 must
be vacated.

The city also claims that the commissioners erred with respect to
the award made to John J. Schacht for damage parcel 39, shown on
damage map No. 4. This parcel is on section 14 of the final maps of
the Twenty-Third and Twenty-Fourth wards, filed in the office of the
register of the city of New York on the 17th day of December, 1895,
which was made pursuant to the same authority as section 9 of the final
maps already considered. The damages are claimed on account of
the closing of Punett street, which was not a street shown on either
map of the village of Mt. Eden. This map indicated the former ex-
istence of Punett street within the block bounded by Jerome avenue,
Tremont avenue, Walton avenue, and East 177th street, and shows
that it was intended to be closed. Not only was this block bounded by
Jerome avenue, but this parcel had a frontage on Jerome avenue, and
the claimant owned the fee of Punett street. The award was made
upon the basis that Punett street was an open public street and was
closed by the filing of the map on account of the fact that Jerome
avenue was retained as it previously existed; but the damages were
awarded not as of December 17th, 1895, when section 14 of the final
maps was filed, but erroneously as of November 2, 1895, when section
9, which did not embrace these lands, was filed. The city, however,

makes no point with respect to this. The observations already made show that Punett street, if it existed as a public street, was closed by the filing of the map on account of the fact that the block was bounded by Jerome avenue.

A serious question is here presented with respect to whether Punett street was a public street. The claimant, Schacht, took title to a plot of ground on the northeast corner of Jerome avenue and Waverly street in 1886, having a frontage of about 254 feet on Jerome avenue and 346 feet on Waverly street, extending in depth on the easterly line about 243 feet and on the northerly line about 283 feet. On the map filed by the department of public parks in 1879, to which reference has been made, Punett street was shown as intended to be laid out, but not as an existing street. It was to run from Waverly or 177th street to Burnside avenue, a distance of two blocks, passing across the southeasterly part of this parcel. The testimony of the claimant shows that when he took title to this plot he went to the department of parks and found this street laid out on said map, and thereafter and during the year 1886 he subdivided his property into lots upon a map and laid them out with reference to Punett street as plotted on said map. It does not appear that this map, made by the owner, was filed in any public office of the city, nor does it appear whether or not the lands embraced within the lines of Punett street, as thus plotted, have ever been exempted by the public authorities from taxation. The owner then sold off some lots on Jerome avenue, and one interior lot on Punett street, and another on the corner of Punett and Waverly or 177th street. In about the year 1902 he sold another interior lot on Punett street. These three lots were bounded on Punett street, but the fee to the street was retained by the grantor. In 1892 the owner built a stable on the part of the parcel lying southeasterly of Punett street, slanting the building at one point to accommodate it to the line of Punett street. The testimony of the claimant tends to show that Punett street for a distance of about 250 feet northerly of Waverly or 177th street was open and fenced by him; and actually used by the public from 1887 down until about the year 1902. It was neither paved nor graded, but, according to his and other testimony, gutters had been constructed along the sides, and it could be used by vehicles and persons on foot, and was so used. The undisputed evidence shows that the rest of this alleged street to the north was impassable and was never used by the public. It has not been shown by whom the gutters were made. There is some evidence in the record tending to show that from time to time workmen with wagons were seen in Punett street, near Waverly street, at work removing sand from the gutters which was washed down Waverly street by the storms, so that the water would flow off to the north; that these men at times filled holes in that part of Punett street which was open to public use, and cut the grass in the same; and that these men also worked on Waverly or 177th street and on Jerome avenue, which were public streets. There was no dwelling house on the street, and the only buildings were a carriage and wagon factory on the westerly side, on one of the parcels conveyed by the claimant, and a blacksmith shop on his own land on the easterly side of the street. The only use made of the

street was for access to these buildings. Said section 14 of the final maps shows Punett street as plotted on said map filed by the park department, and shows it closed.

It is quite clear that the plotting of Punett street as a new street on the map filed by the park department affected no right, title, or interest of the owner. Down to that time there had been no attempted dedication of these lands as a public street, and there was nothing for the public authorities to accept. As already observed, the map was prepared upon the theory that this was to be laid out as a new street, and not upon the theory that there was a dedicated street to be accepted. Assuming that the acts of the owner thereafter indicated an intention on his part to dedicate the street, it would seem that it would require some further act of the public authorities accepting the same. There being no evidence that the map prepared by the owner, with reference to which he sold his land, was filed so that it became a public record, it is doubtful whether he would have been estopped from claiming full value for the land had the city instituted condemnation proceedings. In view of the fact that the alleged street was merely a cul-de-sac and led only to these two places of business, the evidence with respect to the use of the street by the public is too meager to constitute an acceptance. The evidence perhaps gives rise to the inference that the men who worked on the street were employés of the city, but it is not entirely clear that the work they did was for the purpose of keeping the street in repair for public travel, and some of it, at least, indicates that they may have been trespassers, and that their object was merely to open the gutters to enable the waters to run from the public street. In any event, it was not such as to give rise to a presumption that it was authorized by the city. If, upon a rehearing, it should be established that this was a public street, it is to be borne in mind that the claimant, at the time it was closed, owned the fee, and it would seem that his damages should be assessed upon the basis of the extinguishment of the public easements only, for, owning the fee, he retained the same right of ingress and egress, and lost merely the benefit of having his property fronting upon a public street which presumably would be maintained as such.

All of the other awards were made for parcels within blocks shown on section 9 of the final maps of the Twenty-Third and Twenty-Fourth wards, wholly bounded by new streets and avenues which had neither been dedicated nor acquired by the city nor were in use as public streets at the time of the filing of said map. In each instance the commissioners have proceeded upon the theory that the streets which were intended to be closed and discontinued by this map became legally closed and discontinued when title to the first street or avenue bounding the block in whole or in part vested in the city, and in no instance is there any evidence that such street had been actually physically opened for public use. The city contends that the commissioners erred in ruling that the streets became legally closed, and that the right to damages accrued to the owners upon title vesting in the city to one of the new streets bounding the block in part. I am of opinion that this point taken by the learned counsel for the city should be sustained. Although, as already observed, the Legislature has not, by sec-

tion 2 of the act of 1895, provided in all cases that an open existing street was not to be closed until the property owner should be afforded access to his premises through a new street, yet, to the extent that an attempt has been made in this direction, it is upon that theory. It was evidently intended that streets then in use should not be discontinued until at least one street bounding the block should be opened for public use. This view was expressed by Mr. Justice Scott in Johnson v. Cox, 42 Misc. Rep. 301, 86 N. Y. Supp. 601, which was cited with approval by this court in Matter of City of New York (Jerome Avenue) 120 App. Div. 201, 105 N. Y. Supp. 315. Our decision in the last-mentioned case was modified by the Court of Appeals and affirmed. That court, however, agreed with our construction of the statute in this regard, and squarely held that the statute has reference to actual physical opening of the new street. Matter of City of New York, 192 N. Y. 459, 85 N. E. 755. All of the other claimants, therefore, at the time of presenting their claims, still retained the same right to use the streets which are to be discontinued that they theretofore enjoyed, and their claims were prematurely filed before any right of damages had accrued. With respect to these awards, as we view the evidence, the commissioners had no jurisdiction, and, were it not for the fact that it is evidence that the amount of the awards has been assessed upon property benefited, it would be unnecessary to refer the matter back to the commissioners, but on account of such assessments for benefits, it seems unavoidable that the matter must be remitted to the commissioners. On this matter, however, we have not been aided by the views of counsel, and it will receive further consideration, if necessary, on the settlement of the order.

It follows, therefore, that the order, in so far as it confirms the report of the commissioners as to awards for damage parcels Nos. 24, 28, 30, 33, and 34, should be affirmed, with costs to respondents separately appearing, and with respect to the awards made for damage parcel 32 other than to Louis Brass, it should be affirmed, with costs to respondents, and, in so far as an award is made to Louis Brass, it is reversed without costs, and with respect to the award for damage parcel 39, and with respect to all other awards, it should be reversed, without costs, and the matter referred back to the commissioners for a rehearing or to revise their report both as to awards and assessments of benefits, but the order is to be settled on_notice, and the direction with respect to referring it back to the commissioners may then be further considered, if necessary.

McLAUGHLIN and HOUGHTON, JJ., concur.

INGRAHAM, J. (dissenting in part). The city of New York instituted this proceeding to acquire title to the real property necessary for the opening of Walton avenue from 167th street to Tremont avenue, in the city of New York. While that proceeding was pending, the owners of certain real property applied to the court to have commissioners appointed in this proceeding to determine the damage caused to certain property owned by them in consequence of the discontinuance of certain streets and avenues upon which their property

abutted. The commissioners of estimate and assessment made a report awarding various sums of money to the owners of property abutting on such closed and discontinued streets, and from the order confirming their report the city of New York appeals.

This application was made under the provisions of chapter 1006, p. 2037, of the Laws of 1895. That act became a law on the 12th of June of that year, and it provided generally that, upon the filing of a map upon which existing streets and avenues were not shown as continuing to be permanent streets of the city, such streets and avenues not shown upon the map shall—

"cease to be or remain for any purpose whatever a street, avenue, road, highway, lane, alley or thoroughfare and the owner in fee of the land or soil within the boundaries thereof may thereupon enclose, use and occupy the same as fully as if the same had not been laid out, dedicated, established or used."

The final map of the Twenty-Third and Twenty-Fourth wards covering the territory in this locality was adopted by the board of street opening and improvement on June 17, 1895, and filed as required by law on October 31, 1895, and November 2, 1895, and confirmed by chapter 712, p. 859, Laws of 1896. Upon this map Walton avenue was laid out as an avenue upon the permanent plan of the city of New York, but certain other streets and avenues which were then open and existing streets and avenues were not laid out upon the map, and thereby by force of the statute ceased to be or remain for any purpose whatever a street or avenue of the said city of New York. This proceeding was instituted for the purpose of acquiring property to open Walton avenue in March, 1897, and on the 18th of March, 1897, an order was entered appointing commissioners of estimate and assessment, and such proceeding is still pending. Subsequently the owners of property abutting on the various streets and avenues closed and discontinued by the filing of the map of the city of New York presented petitions to the court asking to have the damages to their property caused by the closing and discontinuance of the said streets ascertained by the commissioners. An order was thereupon entered directing the commissioners of estimate and assessment heretofore appointed in this proceeding to ascertain the damage, if any should justly be made and legally awarded to the petitioners for the loss and damage, if any, sustained by certain premises described by reason of the closing, discontinuance, or abandonment of the streets or avenues which had been so closed.

The question is again presented as to the construction to be given to the provisions of chapter 1006 of the Laws of 1895. It must be considered, I think, as now definitely determined, that by that act not only were these streets and avenues not retained upon the permanent plan of the city of New York and closed as public streets and avenues, but also as private ways or roads, and that after the streets and avenues retained upon the map or plan of the city were opened the owners of the fee of the discontinued streets were authorized to inclose the same free from any easement, public or private, and that the damages caused to any owner of property abutting on any such closed or discontinued street could be assessed or determined by com-

missioners appointed as provided for by the act and paid by the city of New York (Matter of Vanderbilt Ave., 95 App. Div. 533, 88 N. Y. Supp. 769, 119 App. Div. 882, 104 N. Y. Supp. 1133, affirmed 189 N. Y. 551, 82 N. E. 1133), and that this act is constitutional (Matter of the Mayor, 157 N. Y. 412, 52 N. E. 1126). It is, however, well settled that the owner of property abutting upon a public street is not entitled, in the absence of some legislative authority, to damages sustained in consequence of the closing of a street or highway, and, to entitle the owners of property abutting upon the closed or discontinued street to compel the city of New York to pay the damage sustained by the discontinuance of closing of either the public or private easements in the streets, so closed and discontinued, they must bring themselves within the provisions of the law providing for the assessment and payment of such damage; and therefore, to entitle these petitioners to compensation, they must be entitled to it under the provisions of this act. It seems to me, therefore, that the only question presented is whether, under the provisions of the act of 1895, the various petitioners who have received awards for the damages sustained by the property have brought themselves within the provisions of this act.

The brief filed on behalf of the city asked to have determined the question as to when these streets ceased to be or remain for any purpose whatever a street or avenue. Section 2 of the act provides that:

"Upon and after the filing of such map, the streets, avenues and roads shown thereon shall be the only lawful streets, avenues and roads in that section of such city shown upon such map or plan, and all other former streets, avenues, roads, etc., theretofore laid out, dedicated or established not shown thereon, and which are not then actually open or in public use, shall from and after the filing of such map or plan cease to be or remain for any purpose whatever, a street, avenue, highway, etc. * * * But in all cases where any such street, avenue, road, highway, lane, alley or thoroughfare is at the time of the filing of such permanent plan or plans actually open and in public use, such parts or portions thereof as are included within the boundaries of any square or plot of ground made by the intersection of any streets, avenues or roads laid out by the local authorities upon the permanent map or plan of said city or district thereof in which such square or plot is situated, shall ever after any one of the streets, avenues or roads bounding such square or plot shall be opened cease to be or remain for any purpose whatever a street, avenue, road, highway, lane, alley or thoroughfare, and the owner in fee of the land or soil within the boundaries thereof may thereupon enclose, use and occupy the same as fully as if the same had not been laid out, dedicated, established or used."

This provision seems to me to be clear. So far as a street or avenue is open and in actual use, it continues to be such a street or avenue even after the making and filing of the plan, until a street, avenue, or road bounding the square or plot within which the said road was located shall be opened; but when a street bounding such square or plot shall be opened, the streets or avenues within such square or plot shall then cease to be for any purpose whatever a street or avenue. We have held in Johnson v. Cox, 42 Misc. Rep. 301, 86 N. Y. Supp. 601, affirmed 124 App. Div. 924, 108 N. Y. Supp. 1136, that the opening of the road here provided for meant the actual physical opening of the street so that it could be made available for use. But when a street bounding upon such a square or plot of land is actually and

physically opened, then it is that the portions of the streets not shown upon the permanent plan cease to be streets or avenues for any purpose. It is not expressly provided in the statute that the street or avenue actually opened should afford access to the land abutting on the street that is closed, but I think that that can fairly be inferred to have been the intention of the Legislature, the object being to afford to the owners of property abutting on the discontinued street such means of access to their property as the permanent streets would afford before the closed and discontinued streets should be actually closed for public use. But the moment a street becomes an actually discontinued street under this provision of the statute, then the damage caused to the abutting property by the discontinuance of the street at once accrues, and it is the damage sustained at the time the street becomes an actually closed street to which the abutting owner is entitled. Matter of the Mayor, 166 N. Y. 495, 60 N. E. 180.

As shown upon the permanent plan of the city, there was a block or plot of ground bounded on the west by Townsend avenue, on the east by Walton avenue, on the south by 172d street, and on the north by Belmont street. Across this plot of ground diagonally there ran certain old streets which were not shown upon the map, and which were discontinued, known as "Sixth Avenue," "Seventh Avenue," and "Walnut Street." 28 App. Div. 143, 52 N. Y. Supp. 588; 157 N. Y. 409, 52 N. E. 1126. For the closing of these three streets damages have been awarded, some of which are objected to by the city. The owners of certain property within the bed of Townsend avenue as laid out on this map have been awarded damages caused by the closing of the streets not laid out on the map which intersected this block. In this, I think, the commissioners were wrong, for at most the owners of lots included in Townsend avenue, which was laid out on the map, were entitled to merely nominal damages. Townsend avenue had been laid out as a public street. So much of the bed of the discontinued street as was included within the boundaries of Townsend avenue, the continued or new street, remained a public street. Before it could be appropriated for that purpose, it would be necessary for the city to acquire the title of the property in the street. But the discontinuance of the discontinued street would certainly cause no damage to that property. Assuming that in the block bounded by Townsend avenue, Jerome avenue, 172d street, and Belmont street the discontinued streets were closed upon the filing of the map because of the fact that Jerome avenue was an open existing street at that time, none of the other roads through the block to the south were closed by the filing of the map or until a street was opened which bounded upon that block, and, when the city acquired title to the bed of Townsend avenue and appropriated the property of these petitioners in the bed of that avenue, whatever title or interest the owners of that property then had, which would include any right of damages against the city of New York, was acquired by that proceeding. In awarding damages for that property, if the commissioners held that the bed of the discontinued streets within Jerome avenue belonged to the owners of the fee without being subject to an easement, then they would give to such own-

ers the full value of the land discharged from the easement. If they held, however, that the owners of the abutting land on the discontinued streets still had an easement, then the award for the abutting land would be enhanced by the easement appertaining to it in the bed of the discontinued street. The city proved or offered to prove before the commissioners the fact that the land constituting Townsend avenue had been acquired by the city prior to the commencement of the proceeding to assess these damages, and upon that proof, whatever may be the actual situation of these discontinued streets, no substantial damages for the discontinuance of the street could be awarded to the owners of property in the bed of Townsend avenue, the title to which had been acquired by the city of New York.

The next point taken by the city which it is necessary to discuss is as to Punett street. I think it is entirely immaterial whether Punett street was ever dedicated as a public street. It had been actually used as a street, and persons who had bought property abutting on the street had an easement, which was discontinued by the filing of the map. It had been an actual, open, and existing street, that was under the act of 1895 closed and discontinued as a street for all purposes, and the owners of abutting property were entitled to compensation for the damages sustained thereby. Whether it was a public or private road, the owners of abutting property were entitled to be paid by the city of New York the damages that they sustained because of its discontinuance as such a road. The act so declares, and the Court of Appeals has held that the act is constitutional. The same principle would apply to Walton or Sheridan avenues and Eighth avenue.

I think it also clear that a claim must be filed within six years after the street is actually closed and discontinued, and for all claims not filed within that time the owner is barred. It would appear, however, that an actual bona fide claim which merely by mistake contained a wrong description of the property could be amended and such mistake disregarded.

The city also complains as to an award having been made to a judgment creditor of an owner of a lot who would have been entitled to damages. Before these proceedings were commenced the lien of the judgment had expired. The judgment creditor had acquired no lien upon the award, nor any assignment of the right of his debtor to the award. It would appear that a receiver in supplementary proceedings had already been appointed in whom was vested the right to receive this award, and certainly the judgment creditor, who had no other title to the award except the mere fact of having a judgment, where the lien upon the property had expired, was not entitled to the award. As the judgment debtor, the owner of the property, has filed no claim for the award, and the judgment creditor has no lien upon it, that award should have been disallowed.

This seems to dispose of all the points raised by the city.

I concur with LAUGHLIN, J., except as herein indicated, but I think that the case should be sent back to the commissioners to amend their report in accordance with the views expressed.