### In re EDELMUTH.

### In re WALTON AVE.

(Supreme Court, Appellate Division, First Department. February 3, 1911.)

1. EMINENT DOMAIN (§ 247*)—PUBLIC IMPROVEMENTS—DAMAGES—ALLOWANCE OF INTEREST—STATUTE.

　　Laws 1895, c. 1006, § 14, provides that where improvements cause the closing of one street and opening of another the same commissioners of appraisal may estimate the damages in both proceedings, and the proceeding to ascertain the damages from closing the street shall be conducted in accordance with the laws governing the opening of streets. Greater New York Charter (Laws 1901, c. 466) §§ 1001, 1002, allow interest until confirmation on an award of damages for opening a street. *Held*, that the latter sections do not apply to an award for closing a street, and hence section 11 of the act of 1895, providing that awards shall be paid within 30 days after demand, in default of which application may be made to the court for an order compelling payment, fixes the time from which interest may be collected.

　　[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 638–643; Dec. Dig. § 247.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EMINENT DOMAIN (§ 247*)—PUBLIC IMPROVEMENTS—DAMAGES—ALLOWANCE·
    OF INTEREST—DEMAND.
        Where damages for closing a street are awarded against a city under
    Laws 1895, c. 1006, § 14, the city's appeal from the award does not ren-
    der a demand unnecessary to start the running of interest, for despite·
    Code Civ. Proc. § 1314, providing that notice of an appeal by a municipal;
    corporation stays the judgment, a demand is necessary to put the city·
    in default.
        [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 638—ᵣ
    643; Dec. Dig. § 247.*]

        Clarke, J., dissenting.

    Appeal from Special Term, New York County.
    In the matter of the application of Henry Edelmuth, as executor,.
etc., for a peremptory writ of mandamus to William A. Prendergast,.
as Comptroller of the City of New York. From an order directing the·
issuance of peremptory writ of mandamus requiring the payment of an;
award with interest, defendant appeals. Order reversed.

    Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,.
SCOTT, and MILLER, JJ.

    Joel J. Squier, for appellant.
    Benjamin Trapnell, for respondent.

    SCOTT, J. This is an appeal by the Comptroller of the city of
New York, from an order for a peremptory writ of mandamus requir-
ing him to pay the relator an award, with interest.
    The controversy is as to the amount of interest to be paid. In the
proceeding for opening Walton avenue, Henry Edelmuth obtained an
order on July 17, 1903, pursuant to section 14 of chapter 1006 of the
Laws of 1895, directing the commissioners of appraisal to take testi-
mony and ascertain the compensation which should be made for the
damages, if any, to the premises belonging to the petitioner caused by·
the closing and discontinuance of Seventh avenue. Pursuant to this.
order and the direction of the statute above cited, the commissioners.
duly made and filed a report, dated December 5, 1905, awarding the·
sum of $9,040, as the damage suffered by petitioner's land. This re--
port was confirmed at Special Term on June 14, 1906. From the order·
of confirmation the· city appealed successively to this court and to the
Court of Appeals, with the result that the order of confirmation was
finally affirmed by the latter court on November 10, 1909. On July
10, 1910, the relator for the first time served a demand on the Comp-
troller. The order appealed from directs a mandamus to issue requir-
ing the Comptroller to pay the award with interest from December 5,
1905, the date of the report of the commissioners. The order is at-
tempted to be upheld upon the theory that by section 14 of the act of
1895 the provisions of sections 1001 and 1002 of the Greater New
York Charter (Laws 1901, c. 466) relating to the payment or awards
for street openings are made applicable to awards for street closing,
and support for this view is claimed to be found in certain expressions
contained in the opinion of this court in Gillender v. City of New
York, 127 App. Div. 612, 111 N. Y. Supp. 1051. What we decided in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that case was that private easements in the bed of a street were the private property of the owner of the abutting property of which he could not be deprived, by the closing of the street, without compensation, and that since the law made no provision in such a case for the vesting of title in the city before the confirmation of the report of the commissioners in condemnation, the city could not appropriate and destroy these private easements until the owner's damage had been ascertained, and its payment assured by confirmation of the commissioners' report. What was said as to the law governing the payment of awards for the extinction of such private easements was merely by way of argument and illustration, and was not decisive of any question then actually before the court. The street closing act of 1895 is quite distinct from the charter provisions relative to street openings. The only relation between the two is the provision in section 14 of the former act that when a proceeding has been instituted for opening a street or other public place laid out upon the general or permanent plan of the city or district, which is contiguous to or in the neighborhood of a street or public place which has been discontinued, and no proceedings have been had to ascertain the damage caused by such discontinuance, the court may, in its discretion, upon motion of the city or any party interested, refer it to the same commissioners of appraisal, or of estimate and assessment appointed in the street opening proceeding to ascertain and determine the compensation to any person who may have been damaged by the closing of the street or public place referred to. It is then provided that:

"The proceedings to ascertain and determine the same shall be conducted and completed in accordance with the provisions of existing laws relative to the opening of the street or avenue for which the said commissioners were appointed."

It had already been held that the effect of this section is not to merge·or consolidate the two proceedings, but that the proceedings for opening streets are quite distinct and separate from those for closing them; that the provision for referring both matters to one set of commissioners is merely for the sake of convenience and economy, and that the commissioners need not include all their awards, both for opening and closing, in one report, but may, and in some cases should, make separate reports. Matter of Mayor, etc., 87 App. Div. 177, 84 N. Y. Supp. 18. All that the section above cited requires is that "the proceedings to ascertain and determine" the amount of damages shall conform to existing laws for street openings. This regulates the proceedings before the commissioners, and is intended to constitute a guide and rule for them, and its force is wholly spent when the damages have been "ascertained and determined," which is when the commissioners have filed their report and it has been confirmed.

The question when and how the awards shall be paid has nothing to do with their ascertainment and determination. In my opinion therefore the provisions of sections 1001 and 1002 of the charter as to the payment of awards for street openings have not been imported into the street closing act and made applicable to the payment of awards for the closing of streets. Section 11 of the last-named act (chapter 1006,

Laws 1895) provides for the payment of such awards by a provision which certainly applies to independent proceedings to close a street, and I think equally applies in cases when a proceeding for closing a street is carried on in conjunction with one for opening a street. This section provides that such awards shall be paid to the person or persons entitled thereto within 30 days after demand therefor, in default of which application may be made to the court for an appropriate order to compel payment. This I think determines the period from which interest must be allowed. The Legislature clearly intended that the city should pay with reasonable promptness, but devolved upon the claimant the duty of putting the city in default by making a proper demand, and as I consider the proper rule for the allowance of interest in such cases is to estimate it from a date 30 days after a demand has been made. The relator made no demand until July 10, 1910, which as I construe the statute would limit his interest to such as accrues from August 9, 1910, to the date of payment. He seeks to excuse his failure to make an earlier demand by the circumstances that his proceedings were stayed pending the appeals by the city, and he cites section 1314, Code of Civil Procedure, to support this position. That section provides that upon an appeal taken by a domestic municipal corporation "the service of the notice of appeal perfects the appeal and stays the execution of the judgment or order appealed from." Undoubtedly the pendency of the appeals would have been a complete bar to any attempt to enforce the payment of the awards, but the service of a demand would have constituted no part of an attempt to enforce payment. At the most it would have merely laid the necessary foundation for a proceeding to be begun when the bar of the appeal had been removed, and it would also have served to put the city in default and start the running of interest upon the award.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

INGRAHAM, P. J., and LAUGHLIN and MILLER, JJ., concur. CLARKE, J., dissents.