(42 Misc. Rep. 301.)

### ISAAC G. JOHNSON & CO. v. COX et al.

(Supreme Court, Special Term, New York County.   December, 1903.)

**1.** INJUNCTION—OBSTRUCTION OF EASEMENT.

Two owners of adjoining lands abutting on an old road had a perpetual private easement under conveyances from their predecessors in title to use so much of the road as ran in front of the premises of each.   The road was legally closed in proceedings taken under Laws 1895, p. 2037, c. 1006.   *Held*, that one of them would be enjoined from fencing his portion of the road so as to debar the other from access to his premises until the city opened a parallel road designed as a substitute.

Action by Isaac G. Johnson & Co. against Walter Cox and others. Motion for an injunction pendente lite.   Granted.

McKelvey & Mattocks, for plaintiff.

Walter Cox, for defendants.

SCOTT, J.   The plaintiff and defendants both own lots, not contiguous, abutting upon a street or road commonly known as "Old Kingsbridge Road," which runs from the station of the New York Central Railroad at Spuyten Duyvil to the street known as West 230th street.   It is a comparatively level road, well adapted for trucking.   The plaintiff is a manufacturing corporation, using the premises owned by it as a manufacturing plant for the production of castings of steel and other metals.   In the conduct of its business it is obliged to do a great amount of heavy trucking, and it is essential to the proper carrying on of said business that it may have and enjoy ready means of access to the premises upon which its plant is situated.   The Old Kingsbridge road is the only street or road open in front of, or adjacent to, plaintiff's premises, and is the only open road leading from plaintiff's works in an easterly direction toward Kingsbridge. The said road has been open and used as a public road for over forty years certainly, and is generally reputed to have been so open and used for a century or more, and has for very many years been improved and kept in repair by the city.   In 1885 proceedings were instituted by the city to close the Old Kingsbridge road, and to open a parallel street or road known as the Spuyten Duyvil road, which runs from a point about 100 feet northeasterly from plaintiff's manufacturing plant, and continues nearly parallel with the Old Kingsbridge road, and about 150 feet westerly therefrom.   Those proceedings have so far proceeded that the Old Kingsbridge road has been legally closed, although its use has not yet been discontinued, and the Spuyten Duyvil road has been technically opened, title thereto having been vested in the city on or about January 14, 1898, but it has never been regulated or graded, and cannot be traveled.

It is provided by section 2, c. 1006, p. 2037, Laws 1895, relating to the discontinuing and closing of streets and other thoroughfares in the city of New York, that upon the filing of a map showing the intention of the public authorities to close or discontinue any street, road, or other thoroughfare which has been in actual and physical use the owner of the fee of any such street or road is permitted to close and use and occupy the same as fully as if the same had not been laid

out, dedicated, established, or used, provided the contiguous street bounding the plot or square wherein is situated the land sought to be closed and occupied has been opened. The defendants now threaten, under authority of the act above cited, to take possession of, and fence in, that portion of the Old Kingsbridge road in front of the premises owned by them, and thereby to debar plaintiff from making use of said road for any purpose.

The defendants derive their title directly from their father, David B. Cox. The plaintiff derives its title from the executors and trustees of Isaac G. Johnson, deceased. Prior to August 23, 1865, said Isaac G. Johnson and David B. Cox and certain others·were tenants in common of the lands now owned by plaintiff, and of those now owned by defendants, and of various other parcels in the vicinity. Old Kingsbridge road then was, and for many years had been, an open public road. On August 23, 1865, David B. Cox and Isaac G. Johnson and their cotenants executed a partition deed of the property owned by them in common, whereby the parcels now owned and occupied by plaintiff were set apart and conveyed to Isaac G. Johnson, and the parcels now owned by defendants were set apart and conveyed to David B. Cox. The several parcels were described as bounded by the Kingsbridge road. A map was prepared to accompany the partition deed, upon which the Kingsbridge road was shown, and the parcels set off to Isaac G. Johnson and David B. Cox were shown as abutting on this road. The said road had previously, and during the tenancy in common of Isaac G. Johnson and David B. Cox and their cotenants, been used·by them as a roadway for the use and benefit of the property so owned in common. The partition deed reserves to each party to whom a piece or parcel of land is apportioned all the rights in and to the street, roads, or avenues in front of or around such piece or parcel of land, respectively, in all respects the same as all the cotenants had such rights up to the time of the partition.

It appears to be clear, and is not, as I understand it, disputed, that the defendants are the owners in fee of that portion of the Old Kingsbridge road which lies in front of their property, and that that road has been legally closed as a public highway under the act of 1895. The case here presented seems to be on all fours with Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052. That case dealt with property which had been conveyed by a description which bounded it by the Bloomingdale road. It was held that there is a wide and clear distinction between the public easements which·an owner may enjoy because his property abuts upon a street or road and the private easements which come to him by virtue of his grant. The former may be destroyed by the lawful closing by the public of the street; the latter, resting in grant, are indestructible, except by agreement or condemnation. By the partition deed each cotenant to whom was alloted a parcel bounded by the open visible highway known as Kingsbridge road acquired a perpetual private easement, as against each other cotenant, to use as a way so much of said road as ran in front of any parcel set off to any of his cotenants. If the rule enunciated in Holloway v. Southmayd still applies to such cases, this easement survived notwithstanding the road was afterward discontinued as a public road.

It is urged, however, that the rule has been rendered inapplicable by the general act for closing streets in this city known as chapter 1006, p. 2037, Laws 1895. That act in its sixth section provides for the extinguishment of easements as a consequence of closing and discontinuing streets and highways, and for compensation therefor. It is a question as yet undecided by any controlling authority whether or not the easements referred to in the act include such a private easement as the plaintiff claims in this case, or whether the act simply refers to those easements of light, air, and access which accrue to property fronting on a public street or road, and exist because of the fact that it does so abut. It is undoubtedly true, as pointed out in Matter of Mayor, 28 App. Div. 143, 52 N. Y. Supp. 588, Id., 157 N. Y. 409, 52 N. E. 1126, that the purpose of the act was to close highways, and that as an incident thereto it was necessary to extinguish every right and easement which arose out of the existence of the road or highway. Any public interest in the matter of closing a street is, however, fully met when the street has been closed and discontinued as a public street. The public has no concern with any private rights or easements which may exist as between the several owners of property along the line of the street, and it is not inconsistent with the closing of a street as a public thoroughfare that persons may retain by grant or contract a private right of way over the land upon which the road or street was formerly laid out. I think, however, that the plaintiff is entitled to relief under the terms of the act of 1895, whether its private easement has been extinguished or not. That act, as its first section indicates, was intended to permit the public authorities to secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues. It provided for the filing of maps showing the permanent streets, avenues, and roads determined upon, and also indicating, by omission, the former streets, roads, and other thoroughfares which it had been determined to discontinue or close. A distinction was made as to streets and roads proposed to be closed, which had been laid out, dedicated, or established, but were not actually open or in public use, and those which at the time of the filing of the map were actually open and in public use. As to the former, the owner of the fee of the land or soil within the boundaries of the discontinued highways might at once inclose, use, and occupy it. As to the latter, however, the owners of the fee might not inclose, use, and occupy it until one of the streets, roads, or avenues shown on the permanent plan as bounding the square or plot containing that portion of the old highway sought to be used and occupied "shall be opened." The word "opened," as used with reference to streets and public places in this city, has come to have a special technical meaning, recognized in many statutes, as referring to the time when the city becomes vested with the title to the land upon which the street or avenue is to run. I do not think, however, that it can be held to have been used in that sense in the act referred to. The purpose of the act was to substitute one system of public highways for another by opening new streets and closing old ones. It certainly was not intended to physically close the streets of one system without providing something to take their places. The whole scheme was one of substitution. It is common knowledge that

the actual physical opening of new streets so that they can be traveled is often postponed for a long time after they have been technically opened. In the case of Spuyten Duyvil road it has been postponed for six years. I cannot doubt that the intention of the Legislature, in making the distinction between discontinued streets not actually open at the time of filing the map and those which were then actually open and in use, was that, although a street actually open and in use might be technically and legally closed, yet that its use as a public thoroughfare should not be impeded until a usable substitute had been provided. Such intention will be carried into effect if the word "opened," in the clause providing that in certain cases an old street shall not be interfered with until the new street has been opened, is construed in its popular sense as meaning actually opened so that it can be used. Any other construction of the statute might work, and in the case at bar would work, great hardship, which could not ordinarily be compensated for in damages, since the commissioners of estimate would have no means of foretelling how long the public authorities would delay the actual physical opening of the new street. The Spuyten Duyvil road, which seems to have been intended as the substitute for the Old Kingsbridge road, although technically opened by the acquisition of title in 1898, has never been regulated or graded, and cannot be traveled. In my opinion, until it has been made available for use the Kingsbridge road must remain unimpeded. The plaintiff's motion for an injunction pendente lite must therefore be granted, with $10 costs, upon its giving an undertaking in the usual form in the sum of $2,500.

Motion granted, with $10 costs.