---

In re SPUYTEN DUYVIL ROAD IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

1. MUNICIPAL CORPORATIONS (§ 404*)—CLOSING OF STREETS—COMPENSATION—PROCEEDINGS.

    A proceeding instituted by a property owner under Laws 1895, c. 1006, § 14, providing that when a street is to be opened contiguous to one that has been discontinued, damages for which discontinuance have not been awarded, parties interested may move that the same commissioners as in the street opening proceedings shall assess damages for discontinuance, is separate from the street opening proceedings, and to justify an award the property owner must show the institution of proceedings for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

opening a street contiguous to property of his which fronts on the street which has been discontinued.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 989–991, 993–999; Dec. Dig. § 404.*]

2. MUNICIPAL CORPORATIONS (§ 404*)—CLOSING OF STREETS—COMPENSATION—PROCEEDINGS.

Under Laws 1895, c. 1006, § 2, providing that, on the filing of a map showing an intention to close a street which has been in actual use, the owner of the fee may occupy the same, provided the contiguous street disclosed on the map has been opened, a street actually in use at the time of the filing of a map not showing the street is not legally closed until the substitute street shown on the map has been actually opened, and, until so opened, no damages accrue to the owner of land abuttting on the street indicated for discontinuance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 989–991, 993–999; Dec. Dig. § 404.*]

3. MUNICIPAL CORPORATIONS (§ 404*)—CLOSING STREETS—AWARD OF DAMAGES—OBJECTIONS.

The failure of a city to appeal from orders referring claims for damages for the closing of one street on substituting another does not prevent the city from insisting, on appeal from an order confirming an award, that the applications for damages were premature, because made before the substituted street was actually opened.

[Ed. Note.—For other cases, see Municipal·Corporations, Cent. Dig. §§ 989–991, 993–999; Dec. Dig. § 404.*]

Appeal from Report of Commissioners.

Proceedings to have commissioners in the Spuyten Duyvil Road opening proceeding assess damages for the discontinuance of the Kingsbridge road. From an order affirming the report of commissioners of estimate and assessment, the parties aggrieved appeal. Reversed.

See, also, 116 N. Y. Supp. 857.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

James R. Fitzgerald, of New York City, for appellant City of New York.

Alpheus H. Favour, of New York City, for appellants Estate of I. C. Johnson and others.

C. C. Ferris, of New York City, for respondents.

SCOTT, J. This appeal relates only to awards made to the several respondents for damages to their real property caused or to be caused by the legal closing and discontinuance of the Kingsbridge road. The appellants are the city of New York and certain owners of property lying within the area of assessment, and who will be assessed and taxed to pay the damages awarded.

The Kingsbridge road is an old road which has been used and maintained as a thoroughfare for many years—certainly over 50 and probably much longer. In remapping the territory added to the former city of New York, and lying north of the Harlem river and Spuyten Duyvil creek, the authorities charged with that duty filed

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a map on November 18, 1895, laying out the Spuyten Duyvil road, which was undoubtedly intended to be a substitute for the old Kingsbridge road. It ran in the same general direction, and to some extent, but not wholly, coincided with the Kingsbridge road, which was omitted from the map, thus indicating an intention that it should ultimately be legally closed and discontinued. The present proceeding, which is one to acquire the land necessary to lay out the projected Spuyten Duyvil road, was begun on June 20, 1897, by an order appointing commissioners of estimate and assessment. These commissioners made a report which was presented for confirmation on September 3, 1904, but confirmation was refused, and the matter referred back to a new commission, whose report was confirmed June 23, 1910. It is from the order so confirming it that these appeals have been taken. Although the appeals are in form from the whole order, they are prosecuted only as to certain awards made for damages alleged to have been suffered by certain property owners, the consequence of the closing of the Kingsbridge road, and as to the confirmation of the assessment for benefit in so far as the same are affected by the damages awarded for such closing.

As a matter of fact, the Kingsbridge road has never been closed or discontinued, but it remains in use to-day, as it always has, as the main public thoroughfare in the vicinity, being cleaned, cared for, and kept in repair by the city of New York. On the other hand, although the title to the land to be occupied by the Spuyten Duyvil road has been acquired by the city, it has not been opened, regulated, or graded, and remains down to the present time merely a street upon paper.

[1] The several respondents instituted proceedings to recover damages under section 14 of chapter 1006, Laws of 1895—the much discussed Street Closing Act. That section provides, in part, as follows:

"Whenever as often as the local authorities shall institute proceedings to open any street, avenue, public square or place laid out upon the general or permanent map or plan of such city or district thereof which shall be contiguous to or in the neighborhood of any lot or parcel of ground fronting on any street, avenue, road, highway, alley, lane or thoroughfare which they have discontinued and closed as aforesaid, and proceedings have not been had or completed to ascertain the damage caused by such discontinuance or closing, the court which shall appoint or has appointed commissioners of estimate and assessment in respect to such opening may at any time upon application of the chief law officer or counsel to the corporation of such city, or upon (the application of) any party or person interested in the land fronting upon the street, avenue, road, highway, alley, lane or thoroughfare so discontinued and closed, order and provide, if it shall appear to the said court to be expedient and proper, that the same commissioners of appraisal or of estimate and assessment shall ascertain and determine the compensation which should justly be made for any loss or damage to the respective owners, lessees, parties and persons respectively entitled in possession, reversion or remainder unto, in and to or included in any lands, tenements, hereditaments, premises, easements, rights or interests taken, affected or damaged by or in consequence of the discontinuance or closing of said street, avenue, road, highway, alley, lane or thoroughfare, or such part or portion thereof as the said court may direct and specify in said order."

A proceeding instituted by a property owner under this section is a distinct and separate proceeding from the street opening proceeding in which the commissioners of estimate and assessment are appointed, notwithstanding the fact that the reference is to the same commissioners who may, and frequently do, report at the same time the damages resulting from the opening of the new street and those arising from the closing of the old. The reference to the same commissioners is merely for purposes of convenience. Matter of Mayor, etc., 87 App. Div. 177, 84 N. Y. Supp. 18; Matter of Edelmuth v. Prendergast, 142 App. Div. 785, 127 N. Y. Supp. 445. In order to justify an award to any property owner under the section above quoted, it is essential that he shall establish the jurisdictional facts which entitle him to this particular relief; that is to say, that the public authorities have instituted a proceeding for opening a street or public place contiguous to or in the neighborhood of a lot or parcel of ground, owned by the petitioner or in which he has an interest, and which fronts upon a street or other public place which they (the public authorities) "have discontinued and closed as aforesaid." It is as essential that the street or public place shall have been closed and discontinued as that the petitioner's property shall front on the closed or discontinued thoroughfare.

[2] The respondents claim, and the commissioners have awarded them damages upon the theory, that those portions of the Kingsbridge road upon which their respective properties fronted were closed and discontinued on November 18, 1895, the day in which the map hereinbefore referred to was filed. As has been said, the Kingsbridge road was not then, and is not yet, physically closed and discontinued, and the appellants insist that it was not legally discontinued and closed on that date and by the filing of that map, for there is a clear and well-recognized distinction between a physical and a legal closing of a public street. Johnson v. Cox, 42 Misc. Rep. 301, 86 N. Y. Supp. 601; Id., 124 App. Div. 924, 108 N. Y. Supp. 1136; Id., 196 N. Y. 110, 89 N. E. 454.

Section 2 of the act of 1895 provides as to any street or other thoroughfare omitted from the map or plan as filed, and thus indicated as one to be discontinued, "but in all cases where any such street, avenue, road, highway, lane, alley or thoroughfare is at the time of the filing of such permanent map or plan actually open or in public use, such parts or portions thereof as are included within the boundaries of any square or plot of land made by the intersection of any streets, avenues or road laid out by the local authorities upon the permanent map or plan of said city or district thereof in which said square or plot is situated shall ever after any one of the streets, avenues, or roads bounding such square or plot shall be opened cease to be or remain for any purpose whatever a street, avenue, road, highway, lane, alley or thoroughfare." It is now settled that the "opening" of a street bounding the square or plot which contains that portion of the street to be discontinued must be an actual physical opening such as to put the boundary street or road in condition for public use and is not merely the technical "opening" consisting of acquiring title to the land. John-

son v. Cox, supra; Matter of Walton Ave., 131 App. Div. 696, 116 N. Y. Supp. 471, affirmed 197 N. Y. 518, 90 N. E. 59; Matter of East 172nd Street, 141 App. Div. 623, 126 N. Y. Supp. 284. The clear intent of the act was that before an old street, actually in use when the permanent map or plan was filed, should be deemed even legally closed, a substitutional street shown on the permanent map or plan as a street to be retained or opened must be actually opened, and, until it is so opened, no damages accrue to the owner of land abutting upon those portions of the street indicated for ultimate discontinuance. In order, therefore, to justify the awards made to the several respondents in this proceeding, it must appear, as to each of them, that his or her property abuts upon a portion of the Kingsbridge road, included within a square or plot as to which a boundary street, avenue, or road shown on the permanent map or plan as one to be retained or opened was actually, physically opened for public use on November 18, 1895, the date on which the permanent map or plan was filed. We have examined with care the many maps and plans attached to the papers on appeal and the testimony taken by the commissioners, and are of opinion that all of the respondents have failed in making satisfactory proof of this essential fact. The statute is not, as we think, satisfied by treating as boundary streets and roads scraps of existing roads not always continuous, rights of way, and the bulkhead line of Spuyten Duyvil creek. It would serve no useful purpose to examine the evidence on this subject in detail.

[3] We do not consider that the failure of the city to appeal from the several orders which referred the claims to the commissioners foreclosed the appellants from now insisting that the applications were premature. Certainly it did not foreclose the individual appellants who were not made parties to the applications, and who are most vitally interested in the outcome. The conclusion at which we have arrived upon the question above discussed renders it unnecessary to give extended consideration to the other interesting questions raised by the appeal and discussed upon the briefs. We refer to them at all only to the end that it may not be inferred from our silence that we are satisfied with the theory upon which the commissioners arrived at their awards. It is apparent that they included in their awards what they deemed to be the value of the claimants' private easements in the Kingsbridge road, as well as their public easements. It is by no means clear that the value of private easements can be compensated for in a proceeding brought by an individual owner under section 14 of the Street Closing Act. He is entitled to recover only for the damages resulting to his particular property; and, while he may be willing to surrender so much of the reciprocal private easements as are appurtenant to his property, it is not easily apparent how he can compel his neighbors or the city, against their will, to compensate him for easements which they have no interest in destroying. In fact, since the decision of the Court of Appeals in Johnson v. Cox, supra, and the remarks of that court in affirming Matter of Walton Ave., supra, the whole question as to the effect upon private easements of the closing of a street under the act of 1895 has been left in much un-

certainty. It seems to have been the intention of the act that the city might, if it saw fit, extinguish and make compensation for both public and private street easements in discontinued streets. Whether even that can be validly done is perhaps a matter of some doubt, but unless the city, for some public reason, determines that private as well as public easements shall be extinguished, and takes affirmative steps to that end in the manner provided by the first thirteen sections of the Street Closing Act, it is at least very doubtful whether an abutter can insist that his private easements be extinguished and compensated for. These considerations open up a wide field for discussion upon which we do not propose at present to enter, since it is not necessary to do so for the decision of the present appeal.

The order appealed from must therefore be reversed, with $10 costs and disbursements to appellants, and the report returned to the commissioners for correction by eliminating the awards made to the several respondents for the damages for the closing of Kingsbridge road, and by readjusting the assessments for benefit accordingly. All concur.